JOSIAH B. PRENTICE, Respondent, *v.* ELIAS H. GEIGER, Appellant.

The question whether a particular use of the water of a stream by one owner is consistent with the rights of other owners on the stream below is generally one of fact for a jury.

In the absence of a right by prescription or grant the test is whether the particular use, under the circumstances, is a reasonable one.

So, the question whether the owner of a saw-mill may lawfully discharge the sawdust therefrom into the stream depends upon the question of fact, whether such use of the stream is reasonable with reference to the rights of the proprietors below; in determining which the jury are entitled to consider all the circumstances, such as the general character and condition of the stream, its volume and rapidity, the injury occasioned, the custom of the country, and the necessity of such use of the stream.

To constitute a right by prescription there must have been an adverse, continuous and uninterrupted exercise of the right for twenty years without substantial change; a party cannot, within the twenty years, enlarge the use, and at the expiration of that time claim the use as so enlarged.

Defendant was the owner of a saw-mill built more than thirty years ago. Until about ten years prior to the commencement of this action it was run by water power, since then by steam. When run by water, as plaintiff's evidence tended to show, it was operated for a few weeks during high water in the spring and fall. The sawdust was thrown into the stream and was carried down over plaintiff's dam below, causing no

sensible obstruction. Since the mill has been run by steam it has been operated continuously during the spring and summer, and a part of the sawdust and refuse therefrom being thrown into the stream during periods of low water, floated down to and being stopped by plaintiff's dam, settled to the bottom, gradually filling up plaintiff's pond. The evidence tended to show that it was the uniform custom in mills propelled by water to discharge the sawdust into the stream; but that this discharge taking place in high water did no injury to ponds below. *Held,* that the question whether the throwing the sawdust and refuse into the stream was a customary and reasonable use of the water incident to the operation of a saw-mill, also the question whether defendant established a right by prescription, or whether there had been a material change in his use of the stream to the detriment of plaintiff, were properly submitted to the jury.

(Argued June 12, 1878; decided September 17, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict. (Reported below, 9 Hun, 350.)

The nature of the action and the facts are sufficiently set forth in the opinion.

*John A. Van Derlip,* for appellant. Defendant had a right to use the stream as it passed through his lands for all reasonable purposes, and in the manner in which such streams are usually enjoyed. (*Carhart* v. *Aub. Gas. Co.,* 22 Barb., 307, 308 ; *Radcliff* v. *Mayor, etc., of Brooklyn,* 4 N. Y., 202; *Thomas* v. *Brackney,* 17 Barb., 654, 656–659; *O'Reilly* v. *McChesney,* 3 Lans., 278; *Snow* v. *Parsons,* 28 Vt., 459, 461–463; *Pitts* v. *Lancaster Mills,* 13 Met., 156; *Cary* v. *Daniels,* 8 id., 476–477; *Jacobs* v. *Albard,* 42 Vt.) Defendant had a prescriptive right to throw his sawdust in the stream, as it was shown he did do. (*Belknap* v. *Tremble,* 3 Paige, 605; *Smith* v. *Adams,* 6 id., 435; Washburne on Easements [281], see 41 [282] ; Angell on Watercourses, 226; *Towndsend* v. *McDonald,* 14 Barb., 460; 3 Kent's Com., 440; Angell on Watercourses, 205; *Murgatoid* v. *Robinson,* 8 Ellis & B., 391; *Ingraham* v. *Hutchinson,* 2 Com., 591.)

*Charles J. Bissell*, for respondent.    The question whether defendant's use of the stream was a reasonable one, under the circumstances, was one of fact.    (*O'Reilly* v. *McChesney*, 3 Lans., 278; *Hay* v. *Cohoes Co.*, 2 N. Y., 159; *Tremain* v. *The Same*, 2. id., 163; *Thomas* v. *Brackney*, 17 Barb., 654; *Housee* v. *Hammond*, 39 id., 89; *Sampson* v. *Hoddinnott*, 38 Eng. L. & Eq., 241; *Merritt* v. *Brinkerhoff*, 17 Johns., 306; *Pollitt* v. *Long*, 58 Barb., 20; *Crossley* v. *Lightowler*, 2 Ch. App., 478; *McCallum* v. *Germantown Water Co.*, 54 Penn. St., 40; *Crosby* v. *Beesey*, 49 Me., 539; *Manly* v. *Shults*, 29 N. Y., 346; Angell on Watercourses [6th ed.], 397, § 224, note 1; *Cotten* v. *Pocassett Manuf. Co.*, 13 Metcalf, 429; *Russell* v. *Scott*, 9 Cowen, 279; *Baldwin* v. *Calkins*, 10 Wend., 169; *Holsman* v. *Boiling Spring Bleaching Co.*, 1 McCarter [N. J.], 335.)    The period of time upon which a prescriptive right to foul the stream in a particular manner can be founded began to run from the time defendant did some act injurious to plaintiff, and upon which the latter could maintain an action.    (*Hammond* v. *Zehner*, 21 N. Y., 118; Angell on Watercourses [6th ed.], 386, § 219; *Murgatroyd* v. *Robinson*, 7 Ell. & Bl., 391; *Polly* v. *McCall*, 37 Ala. [N. S.], 20 ; *Roundtree* v. *Brantley*, 34 id., 544 ; *Cooper* v. *Barber*, 3 Taunt., 99; *Donnell* v. *Clark*, 19 Maine, 174; *Hoy* v. *Sterritt*, 2 Watts, 330.)

ANDREWS, J.    This action is brought to recover damages sustained by the plaintiff from the filling up of his dam by saw-dust and refuse thrown into the stream at the defendant's mill, situated next above the mill of the plaintiff.

The original mill on the defendant's premises was built more than thirty years ago, and was operated by water-power until about ten years prior to the commencement of this action, when it was changed into a steam-mill.    The water-mill was operated a few weeks in the spring and fall, in each year, during the period of high water, and the saw-dust was discharged into the stream, and was carried down over the dam of the plaintiff's mill, causing no material obstruc-

tion or injury. After the steam-mill was constructed it was operated continuously during the spring and summer, and a part of the saw-dust and refuse from the mill — as the evidence on the part of the plaintiff tends to show — was thrown into the stream, and floated down to the plaintiff's dam. During the period of low water, it was not carried over the dam, but, meeting the obstruction of the dam, was stopped, settled to the bottom and gradually filled up the plaintiff's pond, thereby diminishing the depth of water and causing the injury complained of.

The plaintiff's mill was built before the original mill on the defendant's land, and his dam had been rebuilt several times, the last time in 1864; and it was a controverted question on the trial whether the dam of 1864 was higher than the prior ones. The fact as to the injury to the plaintiff being caused by the saw-dust and refuse from the defendant's mill was also disputed. The judge, on the trial, submitted it to the jury to find whether the filling up of the plaintiff's pond was caused by the saw-dust and refuse from the defendant's mill, and, in case that fact was found for the plaintiff, he submitted to them the further question whether the throwing of saw-dust and refuse into the stream by the defendant was a reasonable and proper use of the water of the stream. The jury, by their verdict, found for the plaintiff on both questions and assessed his damages at the sum of $500.

The defendant claimed, on the trial, that the throwing of the saw-dust into the stream was a customary and reasonable use of the water, incident to the operation of a saw-mill, and was therefore justified, although it subjected the plaintiff to inconvenience and damage, and also that by twenty years' use of the stream in this way by him and his predecessors in occupation he had acquired a prescriptive right to such use as against the plaintiff. These claims of the defendant, connected with the charge of the judge in respect to them, present the principal legal questions on this appeal.

The right of a riparian proprietor to the reasonable use of

a running stream, as it flows upon his premises, is an incident to his property in the soil. The use of the water, as it passes, is the only right which, in the nature of things, he can have in it, and he acquires no exclusive right beyond its actual appropriation. But as all proprietors on the stream have an equal right to the use of the water and to share in the benefits from its use, the right of the several owners is not an absolute, but a qualified one, and the use of each must be such as is consistent with the substantial preservation of the equal rights of others. There are some uses which by common consent a riparian owner may have of the water, as its flows upon his premises, although such use may to some extent interfere with the use of the stream in its natural flow by the proprietors below. As, for example, the proprietor above may use the water for domestic purposes — the watering of cattle, and the like — although such use may diminish the volume of the stream to the detriment of lower proprietors. The right to such uses, — without which all beneficial use of the water by the riparian owner would be prevented — is allowed *ex necessitate*, and is universally recognized. So, also, the law allows a riparian owner to apply the water for the driving of machinery, and, to this end, to construct dams, to furnish the requisite head, and to detain the water, subject however to the qualification that he does not thereby flood the lands above him or substantially interfere with the use of the water by the lower proprietors.

The public interest is promoted by the erection of mills and manufactories; and to construe the maxim "*Sic utere tuo ut alienum non laedas*" as prohibiting the use of the water for propelling machinery, if to any extent it interfered with the use of the stream by other owners would produce great public inconvenience, and prevent, in most cases, the beneficial use, and render unavailable the water-power furnished by the streams and water-courses of the country.

But the question whether a particular use of the water by one owner is consistent with the rights of other owners is generally a question of fact to be determined, when a

controversy ari-es, by a jury. And the test, in the absence of a right by prescription or grant, is whether the particular use, under the circumstances, having regard to the maxims governing the rights of property, is a reasonable one. In some cases, the judge would be authorized to direct a verdict, or pronounce upon the facts, that a particular use was permissible, as in some of the cases I have supposed, where by the course of decision or common understanding a particular use is justified.

In this case, the original erection of the defendant's saw-mill and the use of the water for propelling it was a lawful exercise of his right as riparian owner. The question whether the owner of a saw-mill may lawfully discharge the saw-dust therefrom into the stream would depend upon the determination of the question of fact, whether such a use of the stream was reasonable, with reference to the rights of the lower proprietors. The jury, in determining the question, would be entitled to consider all the circumstances — such as, the general character and condition of the stream, its volume and rapidity, the degree of injury which it occasioned, the custom and usage of the country, and the necessity of using the stream for this purpose. The jury might find the use to be reasonable at some periods and in certain stages of the water, and unreasonable at others.

The evidence tended to show that it was the uniform custom in mills propelled by water to discharge the saw-dust into the stream, and that they were so constructed that this could not well be avoided, but it also appeared that this discharge, taking place during high-water, did no injury to the ponds or dams below. But the facts proved in respect to the use made by the defendant of the stream, and the injury caused to the plaintiff by discharging the saw-dust into the stream at times of low-water, made the question of reasonable use one for the jury, and the motion for a nonsuit, on the ground that the use was an ordinary and reasonable one, was properly overruled.

Upon the question of prescription, the court charged the

jury, in substance, that to constitute a right in the defendant by prescription to throw the saw-dust into the stream, there must have been a continued exercise of the right for the period of twenty years, without any substantial change, and that if there was a material change in the use from the time the mill was changed to a steam-mill, whereby the injury to the plaintiff was occasioned, the defense founded upon prescription was not established. The charge was in accordance with the settled law upon the subject. The right acquired by prescription is commensurate with the right enjoyed. The extent of the enjoyment measures the extent of the right. The right is supposed to have had its origin in a grant, and the grant being lost, the user is the only evidence of the right granted, and as the presumption of a grant only exists where there has been an adverse, continuous and uninterrupted user, according to the nature of the easement claimed, for the period of twenty years, the prescriptive right is confined to the right as exercised for that period of time. The party claiming a prescriptive right cannot, within the twenty years, enlarge the use, and at the expiration of that time claim not only the use originally enjoyed but that use as supplemented and enlarged within the period of prescription.

The following authorities sustain the views expressed in this opinion: *Palmer* v. *Mulligan*, (3 Cai., 308); *Platt* v. *Johnson*, (15 J. R., 213); *Merritt* v. *Brinkerhoff*, (17 id., 306); *Baldwin* v. *Calkins*, (10 Wend., 167).

There are no other questions which require special consideration.

There was no error committed on the trial, and the judgment should be affirmed.

All concur, except MILLER and EARL, JJ., absent.

Judgment affirmed.