TOWN OF WHITESTOWN v. STATE.

(Supreme Court, Appellate Division, Third Department. December 28, 1911.)

1. CANALS (§ 18*)—ERIE CANAL—NEGLIGENCE OF SUPERINTENDENT—LIABILITY OF STATE.

The state is liable for the negligence of its superintendent of a division of the Erie Canal resulting in his failure to remove an ice jam and thereby prevent a flood.

[Ed. Note.—For other cases, see Canals, Dec. Dig. § 18.*]

2. CANALS (§ 18*)—ERIE CANAL—NEGLIGENCE OF CANAL SUPERINTENDENT—LIABILITY OF STATE—EVIDENCE.

Evidence held to justify a finding that the superintendent of a division of the Erie Canal negligently failed to remove an ice jam and thereby prevent a flood, rendering the state liable for the damages sustained.

[Ed. Note.—For other cases, see Canals, Dec. Dig. § 18.*]

Appeal from Court of Claims.

Action by the Town of Whitestown against the State of New York. From a judgment of the Court of .Claims dismissing plaintiff's claims for damages against the State, it appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, SEWELL, HOUGHTON, and BETTS, JJ.

W. A. Mattison, for appellant.

Wilbur W. Chambers, Deputy Atty. Gen., for respondent.

HOUGHTON, J. A bridge belonging to the claimant, crossing Criskany creek in the county of Oneida, was destroyed on the 15th of February, 1908, as is claimed, through the negligence of the defendant.

The creek at this point is about 150 feet wide, and it is a stream easily affected by rains and freshets. From 150 to 200 feet below the bridge in question, the Erie Canal crosses the stream by aqueduct, supported by arches, the openings between two of which are about 40 feet, one about 60, and another about 16. Even when navigation is closed, some water remains in this aqueduct which leaks through to the stream below. When ice formed on the surface of the creek and freezing weather continued, this leakage caused the formation of ice between the arches to such an extent that they were oftentimes completely filled, forming together with the aqueduct structure a complete dam across the creek. It had been the custom about the 1st of March in each year to cut out this ice to accommodate the spring freshets. The winter of 1908 had been especially severe, and heavy ice had formed in the creek, and the spaces in the aqueduct for the passage of water had become practically closed prior to the 12th day of February. Previous to this date there had been some breaking up of ice in the creek, and an ice jam had formed about half a mile above the aqueduct, and the weather was still warm. The superintendent of the division of the canal in which the aqueduct was located was informed that the arches were full of ice, and that, if the

creek should break up and a freshet occur, the aqueduct would form a complete dam and serious results would follow. He concluded that March 1st was early enough to cut the ice and made no attempt to remove it. On the 13th of February it began to rain. The ice in the stream broke up. The aqueduct dammed the water and ice back over the claimant's bridge, and when the pressure became sufficient the ice in the arches gave way, and the bridge was carried down the stream.

By a divided court the Court of Claims dismissed the plaintiff's claim, and from the judgment entered thereon the plaintiff appeals.

[1, 2] The state was responsible for the negligence of its superintendent, and we are of opinion that the proof showed such neglect on his part as entitled the plaintiff to recover the damages which it sustained.

It was perfectly apparent that a flood would occur if the ice in the creek broke up, as there were indications of its doing, while the ice remained in the arches of the aqueduct. There had been a partial breaking up of the ice in the stream, and an ice gorge had formed only a short distance above, and residents of the vicinity were so apprehensive that they took pains to notify the superintendent of the situation. He chose to be governed by time rather than circumstances.

It is urged that it usually took from ten days to two weeks to cut away the ice between all the arches. The superintendent could have tried to do what the time permitted. It was testified that the opening of one of the arches would have relieved the situation and prevented the water arising as high as the bridge which was carried away. At least one arch could have been partially cleared, and the water flowing through it would have worn away the remaining ice.

Nor was the flow so unusual as to relieve the state from liability. It had placed an artificial structure across the stream which obstructed the flow of water. Freshets were to be expected. The one which did the damage came earlier than usual, but the superintendent was warned of the situation and chose to do nothing. Had there been no notice to him, a different question might have been presented. The permitting of the obstruction to the flow of water to remain after notice was the proximate cause of the injury.

It follows that the judgment must be reversed, and a new trial granted, with costs to the appellant to abide the event.