THOMAS L. TAYLOR et al., Respondents, *v.* STATE OF NEW YORK, Appellant. (Claim No. 28330.)

WILLIAM MOLTION et al., Respondents, *v.* STATE OF NEW YORK, Appellant. (Claim No. 28266.)

CLIFFORD B. BLACK et al., Respondents, *v.* STATE OF NEW YORK, Appellant. (Claim No. 28481.)

MARY W. HARVEY, Respondent, *v.* STATE OF NEW YORK, Appellant. (Claim No. 28509.)

Argued January 5, 1951; decided January 18, 1951.

*Nathaniel L. Goldstein, Attorney-General (Henry S. Manley* and *Wendell P. Brown* of counsel), for appellant in first above-entitled action. I. The courts below erred in refusing to hold that the State had acquired a prescriptive right to maintain Caughdenoy Dam at its present height. The height of a dam measures the prescriptive right acquired by its maintenance. (*Black* v. *State of New York*, 195 Misc. 484; *Hammond* v. *Zehner*, 21 N. Y. 118; *Marcly* v. *Shults*, 29 N. Y. 346; *Hall* v. *Augsbury*, 46 N. Y. 622; *Ely* v. *State of New York*, 199 N. Y. 213; *Smith & Powell Co.* v. *State*, 11 N. Y. Ct. Cl. 87; *Hammond* v. *Antwerp Light & Power Co.*, 132 Misc. 786; *Stewart* v. *State of New York*, 105 N. Y. 254; *Benedict* v. *State of New York*, 120 N. Y. 228; *Ferguson* v. *Village of Hamburg*, 272 N. Y. 234; *Olofson* v. *Malpede*, 127 Misc. 813.) II. The State need not plead an affirmative defense, even that of prescriptive right. (*Lyons* v. *State of New York*, 274 App. Div. 1086; *Neddo* v. *State of New York*, 300 N. Y. 533.) III. The defense was not barred by failure to assert it against earlier claims. (*House* v. *Lockwood*, 137 N. Y. 259; *Reynolds* v. *Ætna Life Ins. Co.*, 160 N. Y. 635; *Rudd* v. *Cornell*, 171 N. Y. 114; *2018 Seventh Ave., Inc.*, v. *Nach-Haus Leasing Corp.*, 289 N. Y. 490; *Gugel* v. *Hiscox*, 216 N. Y. 145; *Karameros* v. *Luther*, 279 N. Y. 87; *Pagano* v. *Arnstein*, 292 N. Y. 326.)

*Albert Averbach* for respondents in first above-entitled action. I. The State should have been precluded from introducing any evidence of prescription at the trial by reason of

its failure to allege the same as an affirmative defense by answer. (*Ehde* v. *State of New York,* 260 App. Div. 511; *Hammond* v. *Antwerp Light & Power Co.,* 132 Misc. 786; *Ostrander* v. *Bell,* 199 App. Div. 304; *Dulinak* v. *State of New York,* 177 Misc. 372.) II. The affirmative defense of prescription, if available to the State in this case, was lost or waived by its failure to plead. (*Foster* v. *Webster,* 44 N. Y. S. 2d 153.) III. The defense of prescription was not available to the State in this case for the reason that the judgments secured by claimants following the 1936, 1940 and 1943 floodings were *res judicata* and *stare decisis* that the State had not acquired the right to flood by prescription. (*Long Island R. R. Co.* v. *State of New York,* 157 App. Div. 12; *Pagano* v. *Arnstein,* 266 App. Div. 1008, 292 N. Y. 326; *Moore* v. *Harjo,* 144 F. 2d 318; *Reynolds* v. *Schmidt,* 40 F. 2d 238.) IV. The State failed to meet the burden of proof required of it to establish the period of prescription, its continuity and duration commencing with the period when there was some appreciable injury done to claimants' property. (*Burt Olney Canning Co.* v. *State of New York,* 230 N. Y. 351; *Black* v. *State of New York,* 195 Misc. 484; *Hammond* v. *Antwerp Light & Power Co.,* 132 Misc. 786; *Gilford* v. *Winnipiseogee Lake Co.,* 52 N. H. 262; *Betjemann* v. *Brooklyn Union Elevated R. R. Co.,* 127 App. Div. 83, 196 N. Y. 508; *Hinkley* v. *State of New York,* 234 N. Y. 309.)

*Nathaniel L. Goldstein, Attorney-General* (*Henry S. Manley* and *Wendell P. Brown* of counsel), for appellant in second above-entitled action. I. The courts below erred in refusing to hold that the State had acquired a prescriptive right to maintain Caughdenoy Dam at its present height. The height of a dam measures the prescriptive right acquired by its maintenance. (*Hammond* v. *Zehner,* 21 N. Y. 118; *Marcly* v. *Shults,* 29 N. Y. 346; *Hall* v. *Augsbury,* 46 N. Y. 622; *Ely* v. *State of New York,* 199 N. Y. 213; *Smith & Powell Co.* v. *State,* 11 N. Y. Ct. Cl. 87; *Hammond* v. *Antwerp Light & Power Co.,* 132 Misc. 786; *Stewart* v. *State of New York,* 105 N. Y. 254; *Benedict* v. *State of New York,* 120 N. Y. 228; *Burt Olney Canning Co.* v. *State of New York,* 230 N. Y. 351.) II. The courts below erred materially in their use of the *Haskell* case. (*Haskell* v. *State of New York,* 13 N. Y. S. 2d 192, 258 App. Div. 930.) III. This

claim should have been dismissed because no claim or notice of intention was filed within the time limited by section 10 of the Court of Claims Act.

*Raymond M. Bush* for respondents in second above-entitled action. I. No proof was introduced upon the trial to establish any rights of the State by prescription. II. The courts below did not err in their use of the *Haskell* case. (*Haskell* v. *State of New York,* 13 N. Y. S. 2d 192, 258 App. Div. 930.) III. Upon the evidence, the filing of the notice of intention by claimants was timely.

*Nathaniel L. Goldstein, Attorney-General* (*Henry S. Manley* and *Wendell P. Brown* of counsel), for appellant in third and fourth above-entitled actions. I. The courts below erred in refusing to hold that the State had acquired a prescriptive right to maintain Caughdenoy Dam at its present height. The height of a dam measures the prescriptive right obtained by its maintenance. (*Hammond* v. *Zehner,* 21 N. Y. 118; *Marcly* v. *Shults,* 29 N. Y. 346; *Hall* v. *Augsbury,* 46 N. Y. 622; *Ely* v. *State of New York,* 199 N. Y. 213; *Ely* v. *State,* 11 N. Y. Ct. Cl. 65; *Smith & Powell Co.* v. *State,* 11 N. Y. Ct. Cl. 87; *Hammond* v. *Antwerp Light & Power Co.,* 132 Misc. 786; *Stewart* v. *State of New York,* 105 N. Y. 254; *Benedict* v. *State of New York,* 120 N. Y. 228; *Ferguson* v. *Village of Hamburg,* 272 N. Y. 234.) II. The defense was not barred by failure to assert it against the 1944 claim. (*House* v. *Lockwood,* 137 N. Y. 259; *Reynolds* v. *Ætna Life Ins. Co.,* 160 N. Y. 635; *Rudd* v. *Cornell,* 171 N. Y. 114; *2018 Seventh Ave., Inc.,* v. *Nach-Haus Leasing Corp.,* 289 N. Y. 490; *Gugel* v. *Hiscox,* 216 N. Y. 145.) III. The courts below erred materially in their use of the *Haskell* case. (*Haskell* v. *State of New York,* 13 N. Y. S. 2d 192, 258 App. Div. 930.)

*Albert Averbach* and *Irving S. Devorsetz* for respondents in third and fourth above-entitled actions. I. Claimants established by a fair preponderance of the evidence the proposition that the construction and maintenance of the dam during the flood period were negligent acts on the part of the State. (*Galbraith* v. *Busch,* 267 N. Y. 230.) II. The trial court committed no error in receiving the judgment in the *Haskell* case " so far as applicable " on the proposition of *stare decisis.*

(*Haskell* v. *State of New York,* 13 N. Y. S. 2d 192, 258 App. Div. 930; *Fish Farms, Inc.,* v. *State of New York,* 135 Misc. 188; *Stone* v. *State of New York,* 138 N. Y. 124; *Starke-Belknap* v. *New York Central R. R. Co.,* 197 App. Div. 249, 234 N. Y. 630; *Moore* v. *City of Albany,* 98 N. Y. 396; *Matter of Laudy,* 161 N. Y. 429; *Matter of Ordway,* 196 N. Y. 95; *Devine* v. *Melton,* 170 App. Div. 280.) III. The State failed to meet the burden of proof required of it to establish the period of prescription, its continuity and duration commencing with the period when there was some appreciable injury done to claimants' property. (*Hammond* v. *Antwerp Light & Power Co.,* 132 Misc. 786; *Sewall* v. *Fitz Gibbon,* 233 App. Div. 70, 260 N. Y. 638.) IV. The State of New York was estopped from raising the defense of prescription as to claimant Black by reason of the prior judgment obtained by claimant Black. (*Reich* v. *Cochran,* 151 N. Y. 122; *Canfield* v. *Harris & Co.,* 252 N. Y. 502; *Crouse* v. *McVickar,* 207 N. Y. 213.)

DESMOND, J. All of the above-entitled claims against the State are for damages caused by the flooding of Oneida Lake, one of the " Finger Lakes " in central New York. The *Taylor* and *Moltion* claims relate to a flood in October, 1945, and the *Black* and *Harvey* cases to a flood in the spring of 1947. All the claimants own cottages on the shore of the lake, which is some 20 miles long, 4 to 5 miles wide at places, and long known for its violent storms. The *Black* and *Harvey* claims were tried jointly, but there were separate trials as to *Taylor* and *Moltion.* The theory of each suit is that the flood damage (undisputed as to kind and amount) to these houses, was caused by the wrongdoing of the State, in that the State maintained, at a place called Caughdenoy in the Oneida River, which is the outlet of Oneida Lake, a dam so dimensioned and located as to impound the waters of the lake at a level so high that in times of heavy rainfall the lands and houses of claimants, all of which are some miles away from the dam, were reached by floodwaters. Many years ago, the State incorporated Oneida Lake and part of Oneida River into its canal system and, apparently to improve navigation conditions, built during 1908 and 1909 a new dam in the Oneida River at Caughdenoy, to replace an old one. It is undisputed that the new dam had the effect of raising the

surface level of Oneida Lake, permanently, from 368.75 feet (" Barge Canal datum ") to at least 370 feet. At the dam, as first constructed, there were no floodgates or other means of discharging surplus waters except into Oneida Lake. It is undisputed that, beginning soon after the erection of the new dam and continuing right down to the present, there have been filed against the State a great number of claims for flood damages to lakeside properties, that the State has paid or compromised many of these claims and that some of them have resulted in judgments against the State (see, for instance, *Haskell* v. *State of New York,* 13 N. Y. S. 2d 192, affd. 258 App. Div. 930, affd. 283 N. Y. 612). In the *Haskell* case and others which went through the courts and which had to do with Oneida Lake floods at various times, it has uniformly been held, and is now conceded, that the Caughdenoy Dam raised the waters of Oneida Lake above their natural level, and that this change of level was the cause of flood damage during rainy seasons. In 1914, the State attempted to improve the situation by installing a floodgate in the river, which gate, when opened, diverts some of the waters into a stream other than Oneida Lake. In 1934–1935 the State made another attempt to ameliorate the condition, by means of a nearby guard gate which could be used as a floodgate also. However, the present claims, and others, show that the flood damages continued after those gates had been installed. It is shown in these present records that conditions at and near the dam are such that while the dam itself permanently raised the lake level by a foot and one-half, heavy rains bring to the dam a volume of water so great that the lake level is, for periods, raised considerably higher, hence the damage.

In some of the present cases it is conceded by the State, as it was held in the *Haskell* case (*supra*) and others, and as held below in all the present cases, that the building of the new dam in 1909, at the higher level, was a wrong done by the State to the owners of properties on Oneida Lake. In some of the present cases, as will be indicated hereafter, there is a further claim that the State was, in specific instances, guilty of new negligent omissions in failing to make proper use of the floodgates above referred to. In all of these present suits, the State takes the position that there was no fault on its part except as to the original building and continuing maintenance of the dam

at an improper level, and that as to that, it has, by lapse of time, acquired a prescriptive right or easement so to maintain the dam at such a height, and incidentally, to flood these properties. In all the suits judgment went for claimants and as to each there was a unanimous affirmance by the Appellate Division, the *Taylor* appeal having been decided by the Third Department, Appellate Division, and the others by the Fourth Department, Appellate Division. Since the proof, issues and findings differ as between the cases, it will be necessary to take them up separately herein.

1. *The Taylor claim.* The State, as to this claim, concedes that the construction of the dam in 1909 was an act of negligence on its part, violating the rights of claimants' predecessors in title, and that this act was a cause of the 1945 flood damage. As to this claim there are no findings of negligent operation of the floodgates, so that issue is out of this case. It does appear, however, that these claimants Taylor, or their predecessors, have recovered judgments against the State for earlier flooding damage done in the years 1936, 1940 and 1943. The State's position as to this *Taylor* claim, and all the others treated herein, is that, by uninterrupted use of the dam at its present height at least during the period 1914 to 1936 (the reason why the State selects that particular period is suggested in Presiding Judge BARRETT's opinion in *Haskell* v. *State of New York,* 13 N. Y. S. 2d 192, *supra*), the State acquired as against all the world a right to continue to so maintain and use the dam. Of course, that alleged defense would have been available to the State as against the earlier claims for damage to this very property, and it is undisputed that no such defense was asserted by the State against those earlier claims which went to judgment. Since that alleged right of the State, now asserted for the first time, was as available then as now, it must be held that those earlier judgments have concluded the State on this issue as to these claimants, according to the principle of *res judicata,* or, more accurately, estoppel by judgment, under the rule of *Reich* v. *Cochran* (151 N. Y. 122). There being no other defense, that disposes of the *Taylor* claim.

2. *The Moltion claim.* Claimants Moltion owned two cottages and both were damaged by the October, 1945, flood. There

was no proof of any prior damage or awards, as to these Moltion properties. There was, however, testimony, which the courts below have credited, that there was at the time of the flood in question, a negligent failure of the State's employees properly to operate the floodgates, and that this negligence was one of the causes of the inundation. Accordingly, the findings are not only that the permanent raising of the lake level by the dam was wrongful (as the State concedes), but also that the State, despite warnings, failed to open either of the gates until the flood had reached its crest. Since those findings of negligence as to the gates are sufficient to uphold the judgment, it is unnecessary, as to this *Moltion* claim, to consider whether or not the courts erred in rejecting the State's alleged defense of prescriptive right since, of course, there could not under any circumstances be any right in the State to fail to exercise ordinary care as to the floodgates. As to this *Moltion* claim (but not as to any of the others here under consideration) the State asserts another defense: that no claim or notice of intention to file a claim was filed within the ninety days specified in section 10 of the Court of Claims Act. That time-limiting statutory provision has been construed, in a long line of cases (see, for instance *Dufel* v. *State of New York,* 198 App. Div. 97, and *Di Laura* v. *State of New York,* 169 Misc. 912), the authority of which cases the State apparently concedes, as meaning that, as to claims like these, the ninety days does not start to run until the extent of the damage can be ascertained. We agree with the Trial Judge that there was evidence here that ice resulting from this overflowing was frozen around these buildings, at least until January, 1946 (such testimony, apparently, was received as to this claim, although directly referring to other nearby damaged properties). Since claimants' notice of intention was filed with the Clerk of the Court of Claims on February 13, 1946, it was timely.

3. *The Black claim.* Here again the State concedes that the original construction of the dam and its continued maintenance at the unlawful height was wrongful, but the State insists on its alleged prescriptive right as a defense. However, claimants Black had an earlier judgment against the State because of a flood in 1944, and, although the State, in that suit, did not defend

on the ground of prescriptive right, the former judgment concludes the State on this point, just as in the *Taylor* case and for the reasons above stated as to the *Taylor* claim.

4. *The Harvey claim.* Here there was no prior award to the owner for other flood damage, and there are no findings of negligence in operating the gates. Consequently, the only wrong upon which this claimant can rely is the continuing one of the maintenance of the dam at a level which from time to time caused floods. Therefore, says the State, its defense of alleged prescriptive right is good at least as to this claim, since, as the State contends, it continuously kept the dam at the flood-causing level at least during the period 1914 to 1936. The trial court, however, refused to find, as requested by the State, that this particular Harvey property had been flooded each year from 1914 to 1936, and this refusal was justified. Proof that the top dam was at a certain level during all those years, and even that some parts of the lake on various days through those years reached flood levels, would not conclusively establish that the floodwaters came onto these particular premises. All parties agree, and it is a matter of common observation, that water levels will vary at different parts of the same lake, particularly during storms. The State next argues, however, that, to establish its asserted prescriptive right, it did not have to prove that there was continuous flooding of this property from time to time during all these years. The State says that the height of a dam measures the prescriptive right obtained by its maintenance, that is, that the uninterrupted use of the dam for the prescriptive period to maintain water at levels determined by the height of the dam and the variations of the weather will establish the right against all the world so to use the dam. Even if that were the general law applicable, it would be at least doubtful if it could apply to a dam like this one, which includes gates which can be used to divert the excess water. In other words, the continued use of a dam would not seem to be an assertion of a right to impound such water as the dam will hold back, when as part of that very dam, there exist openings to take care of part of the water. Beyond that, we think that the law of this State is, and should be, that a prescriptive right to continue a dam at a certain height, and to divert

the resulting floodwaters onto neighboring lands, can be established only by showing that, over the appropriate period (presumably fifteen years, see Civ. Prac. Act, § 34), there was more or less uninterrupted user of that claimed right, by successive floodings of the land as to which the right is claimed.

The State argues that there are two possibly applicable rules: one, the so-called " height of the dam " rule, and the other the " flowage " rule. We think there is one rule only in this State. Back in 1827, our predecessor, the Supreme Court, held in *Stiles* v. *Hooker* (7 Cow. 266) that it is not the height of the dam, but of the flooding waters, which determines whether a prescriptive right has been acquired. The court said (p. 268) : " And if for 20 years, the defendants have raised their water but 5 feet; and afterwards they raise it 6 feet, by the same dam; and the additional foot injures the plaintiffs, they are entitled to damages. The judge was right. It is not the height of the dam, but of the water which does the injury." *Stiles* v. *Hooker* (*supra*) is cited in *Gilford* v. *Winnipiseogee Lake Co.* (52 N. H. 262) a leading authority in which, as summarized in the headnote, the rule is stated thus: " Merely maintaining a dam for twenty years does not give a prescriptive right to flow land as high as it can be flowed by that dam. To acquire such right, the water must be actually raised on the adjacent owner's land so often as to afford him reasonable notice, during the entire period of twenty years, that the right is being claimed against him." Since prescriptive rights over another's land are measured by user, there must be clear proof of user. As we said in *Prentice* v. *Geiger* (74 N. Y. 341, 347) : " The right is supposed to have had its origin in a grant, and the grant being lost, the user is the only evidence of the right granted, and as the presumption of a grant only exists where there has been an adverse, continuous and uninterrupted user, according to the nature of the easement claimed, for the period of twenty years, the prescriptive right is confined to the right as exercised for that period of time." We do not read *Ely* v. *State of New York* (199 N. Y. 213) or any other New York decision called to our attention, as changing the rule of *Stiles* v. *Hooker*. The rule has the merit not only of venerable age, but of fairness and justice. It has been followed elsewhere (see 56 Am. Jur., Waters, p. 632, and cases cited) and should be applied here.

To avoid any misunderstanding, it should be stated that our rejection of the State's asserted defense of prescriptive right is not by reason of the failure of the State to plead such a defense. The State was not required to serve or file any answer at all, and loses no rights by its failure so to do (Court of Claims Act, § 9, subd. 9; Rules of Court of Claims, rule 13; *Lyons* v. *State of New York*, 274 App. Div. 1086, appeal dismissed 299 N. Y. 593).

In the *Taylor* and *Moltion* cases the judgments should be affirmed, with costs; in the *Black* and *Harvey* cases the judgments should be affirmed, but without costs, as stipulated by the parties.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DYE, FULD and FROESSEL, JJ., concur.

Judgments affirmed.