TOWN OF VIENNA, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 29493.)

Court of Claims, February 26, 1953.

*Pirnie Pritchard* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Douglas L. Manley* of counsel), for defendant.

RYAN, J. This is one of a group of 117 claims filed against the State of New York as a result of an overflow of Oneida Lake which occurred in April, 1947. Although not all of the claimants were represented by the same attorney of record or by the same counsel, it was understood that the State's liability for the group was to be determined by the trial of the claim of *Harvey* v.

*State of New York* (Claim No. 28509). Repeated calendar calls and correspondence confirmed that understanding with the Attorney-General's representatives, with counsel for the various claimants and with the court. After the affirmance by the Court of Appeals of our decision in the *Harvey* claim, reported *sub nom. Taylor* v. *State of New York* (302 N. Y. 177), which fixed the liability of the State of New York for damages resulting from the flood above-mentioned, the Attorney-General entered into agreements of adjustment of their damages with all of the claimants in the group, including this claimant, the Town of Vienna, and thereupon, formal proofs having been taken, judgments in favor of the claimants were entered and all of the claims disposed of, all save this one.

This one is submitted to the court upon a written stipulation of facts, which stipulation reads as follows:

The following facts are hereby stipulated by and between the parties hereto for the purpose of this claim only and not as binding upon them for any other purpose:

1. Claimant is a municipal corporation established under the Laws of the State of New York and located in the County of Oneida, New York.

2. At all times hereinafter mentioned, claimant has maintained along the northeasterly shore of Oneida Lake a town highway running from the Hamlet of North Bay on said Lake southeasterly to its intersection with a highway designated as New York State Route 13.

3. By reason of the construction and maintenance of the Barge Canal by the defendant, as more particularly appears hereinafter, a portion of said town highway was flooded and washed out in the year 1947 and prior years, putting claimant to the expense of repairing the same.

4. In 1909 pursuant to Chapter 147 of the Laws of 1903 and as a part of the Barge Canal System, to permit navigation by maintaining a constant depth of at least 12 feet, the defendant constructed a solid concrete dam across the Oneida River, the only outlet of Oneida Lake, at Caughdenoy, Oswego County, New York, for the purpose of impounding the waters of such Lake to the prescribed minimum depth for navigation.

5. Since 1905 as a consequence of said dam, said town highway has been washed out nearly every year by the high waters in the Spring and repaired or rebuilt by claimant.

6. The cost to claimant of such repairing and rebuilding in 1947 to restore such flooding occurring in April of that year was $2,032.30.

7. The portion of highway so flooded and repaired in 1947 was, as a consequence of said dam, continually and uninterruptedly inundated, covered, and in most years washed out, by the waters of Oneida Lake during the periods of high water each year for fifteen or more consecutive years prior to 1947.

8. The claim was filed March 29, 1949, pursuant to a notice of intention filed June 27, 1947, but no claim or notice of intention was ever filed or served prior thereto to recover such damages or any other damage to said highway.

The Attorney-General interposes three points of law:

I. Taking paragraph 7 of the stipulated facts he asserts that its language brings the facts of this case directly under the law as enunciated by Judge DESMOND at pages 186–187 of the *Taylor* case (*supra*), viz., "a prescriptive right to continue a dam at a certain height, and to divert the resulting floodwaters on to neighboring lands, can be established only by showing that, over the appropriate period (presumably fifteen years, see Civ. Prac. Act, § 34), there was more or less uninterrupted user of that claimed right, by successive floodings of the land to which the right is claimed."

The point is not well taken for two reasons. First, paragraph 7, hereinabove quoted, does not indicate with any exactness the portion of the highway flooded in 1947, nor in prior years; nor does it inform the court as to the exact duration of the periods of high water in 1947 nor in any prior year. Since the prescriptive right can be made out only by clear and positive proof, the recital fails for indefiniteness as a basis upon which to rest a determination that the right had been acquired. (*Hammond* v. *Zehner,* 21 N. Y. 118; *Prentice* v. *Geiger,* 74 N. Y. 341; *Olney Canning Co.* v. *State of New York,* 230 N. Y. 351; *Knauth* v. *Erie R. R. Co.,* 219 App. Div. 83; *Hammond* v. *Antwerp Light & Power Co.,* 132 Misc. 786, 791.)

Furthermore, the doctrine of prescriptive right is not a defense available to the State of New York herein, for the law is that there can be no prescriptive right against property affected with a public interest or dedicated to a public use. (*Driggs* v. *Phillips,* 103 N. Y. 77; *St. Vincent Orphan Asylum* v. *City of Troy,* 76 N. Y. 108; *Matter of City of New York,* 217 N. Y. 1.) Although the foregoing cases are instances where individuals or private corporations attempted to assert a prescriptive right in a public thoroughfare they are applicable as authorities herein because by section 8 of the Court of Claims Act the State of New York stands in no different situation than an individual, having consented that like rules of law shall apply to it. Moreover, since prescriptive right is based upon the fiction of a lost grant it would be absurd to make a determination which would in effect hold that the town officials gave the State the right to flood and destroy a public highway every year or so at a certain season. Such action would be clearly beyond their authority, illegal and void. (*Burbank* v. *Fay,* 65 N. Y. 57, 66, 67.)

II. Basing his argument upon the premise that there was a *de facto* appropriation of an easement to flood the Town of

Vienna's highway, the Attorney-General asserts that this claim was untimely filed. To support his position on this point, he relies on (a) the stipulated fact that a solid concrete dam across the Oneida River was constructed in 1909 and (b) the omission from the stipulation of any mention of *negligent* construction, whereas in the *Harvey* case there was a definite finding that the Caughdenoy dam was negligently constructed. Thus, ingeniously, the Attorney-General finds it plausible to argue that the applicable Statute of Limitations in this case was not ninety days after the accrual of damages consequent upon the flood of April, 1947, with which limitation this claimant has complied (par. 8 of stipulated facts) but was two years after the *de facto* appropriation of 1909. To put it plainly, the Attorney-General asks this court to exclude from its consideration a fact long established and well known to everybody herein concerned, including court and counsel. That fact is that the Caughdenoy dam was negligently constructed. It has been adjudicated scores of times in the many decisions of this court awarding damages to property owners for injuries which resulted from floods of Oneida Lake in the years 1909, 1913, 1922, 1936 and 1947. Test cases for these various floods were *Coble* v. *State of New York* (Claim No. 10012, affd. 172 App. Div. 912); *Fish Farms* v. *State of New York* (135 Misc. 188); *Haskell* v. *State of New York* (13 N. Y. S. 2d 192, affd. 258 App. Div. 930, affd. 283 N. Y. 612), and *Black* v. *State of New York* (195 Misc. 484, affd. 277 App. Div. 833, affd. *sub nom. Taylor* v. *State of New York,* 302 N. Y. 177, *supra*).

Although not recited therein, we believe this notorious and judicially confirmed fact is implicit in the stipulation for submission of this controversy. But if there is any doubt about it we shall take judicial notice of our own records and add to the stipulated facts, which we adopt as findings, a further finding that Caughdenoy dam was negligently constructed. We do this not on the theory of *res judicata,* because there is not identity of parties plaintiff (*Stone* v. *State of New York,* 138 N. Y. 124), but because this proceeding is interrelated to other claims based on the 1947 flood and justice and the equities require that we avail ourselves of our power to make an exception to the general rule that courts in one case do not take judicial notice of their own records in other cases. (*Kane* v. *Walsh,* 295 N. Y. 198, 204; *Clinton Trust Co.* v. *142–144 Joralemon St. Corp.,* 237 App. Div. 789, 792; *Rossbach* v. *Rosenblum,* 260 App. Div. 206, 210; 31 C. J. S., Evidence, § 50, subd. c.)

However, aside from the question of the right of the court to take judicial notice of its own findings of fact spread repeatedly upon its own records, and turning to the question of a *de facto* appropriation, we find no authority supporting the proposition that the State may in such a manner acquire an easement to flood and damage once a year, or less frequently, a pre-existing and dedicated public highway.

We are willing to grant that the State, exercising its sovereign power through a duly constituted agency and by authority of a proper statute, could formally proceed to appropriate a dedicated highway (*Matter of Grade Crossing Elimination Act* [*Altamont*], 234 App. Div. 129) and that it could do so without compensating the municipality concerned. (*People ex rel. Palmer* v. *Travis,* 223 N. Y. 150, 167.) But that is not the situation here. The Attorney-General claims merely a *de facto* appropriation of an easement enabling the State to flood this public highway occasionally, certainly a use inconsistent with highway purposes. The highway in question has not been appropriated, taken or abandoned (Highway Law, § 205), but has been continuously used by the public and maintained by the Town of Vienna. Occasional flooding and subsequent repair of resulting damage serves only to inconvenience the traveling public and to increase the tax burden of the Town of Vienna. Such a procedure is wasteful and costly and scarcely within the contemplation of section 4 of chapter 147 of the Laws of 1903 or of section 40 of the Canal Law. If the land upon which the highway is located is necessary for Barge Canal purposes, the State has the power to formally appropriate such land. The highway can then be given up or relocated. Upon the foregoing considerations we find the Attorney-General's second point untenable.

III. The Attorney-General states that there is no liability for flooding a public highway by the construction of a public canal. Under this point the Attorney-General asserts that a town highway is held by a municipality in its governmental, as distinguished from its private, capacity. He relies on *People* v. *Kerr* (27 N. Y. 188); *City of Little Falls* v. *State of New York* (266 App. Div. 87, affd. 291 N. Y. 755), and *County of Albany* v. *Hooker* (204 N. Y. 1). He further asserts that the town is a mere governmental subdivision of the State to which the State has entrusted some of its public highways; that the town being agent or trustee may not sue its principal for damage to the principal's own property. Upon this reasoning the Attorney-General argues that claims of a municipality, of which

this court is given jurisdiction by subdivision 2 of section 9 of the Court of Claims Act, are only such claims as affect rights held in a proprietary or corporate capacity, as distinguished from those of a governmental or public nature.

While it was stated in *Cayuga Co.* v. *State of New York* (153 N. Y. 279, 289) that " Counties * * * are mere trustees of the public rights and powers conferred upon them as agents of the State " and while we are willing to substitute for " counties " the word " towns " it should be noted that Chief Judge ANDREWS wrote for a unanimous court in upholding the power of the Legislature to authorize the then Board of Claims to hear, audit and determine the claim of Cayuga County for reimbursement for expense incurred in the public interest. And both general statutes and special enabling acts have provided jurisdiction for this court to make awards to municipalities on claims which were of a public nature. (*County of Ulster* v. *State of New York,* 177 N. Y. 189; *County of Cayuga* v. *State of New York,* 112 Misc. 517; *Village of Albion* v. *State of New York,* Claim No. 18594, unreported; *County of Orleans* v. *State of New York,* Claim No. 18598, unreported; *City of Syracuse* v. *State of New York,* 147 Misc. 319; *Village of Seneca Falls* v. *State of New York,* 115 Misc. 35, and *Town of Whitestown* v. *State of New York,* 148 App. Div. 582.) Indeed the word " person " as set forth in section 47 of the Canal Law (now § 120) was long ago construed to include a municipal corporation. (*City of Little Falls* v. *State of New York,* 198 App. Div. 488); and this court seems already to have answered the question now raised by the Attorney-General in construing chapter 612 of the Laws of 1918. (*Village of Hudson Falls* v. *State of New York,* 111 Misc. 304.) In that case Judge MORSCHAUSER noted the restriction to private claims contained in section 264 of the Code of Civil Procedure. But the broader waiver of immunity set forth in chapter 860 of the Laws of 1939, and now contained in section 8 and subdivision 2 of section 9 of the Court of Claims Act, has put an end to that limitation.

Regardless of this waiver, however, it should be remembered that Oneida Lake is part of the canal system of the State of New York and that this claim is one for damages arising from the operation of the canal. Hence, for jurisdiction herein we need rely only on the provisions of section 120 of the Canal Law, which, as we have already seen, has been held to be broad enough to include the claim of this municipality. (*City of Little Falls* v. *State of New York, supra.*)

An award is directed in favor of the Town of Vienna and against the State of New York in the amount of $2,032.30, together with interest thereon from March 29, 1949. On the matter of interest see cases cited in *Black* v. *State of New York* (195 Misc. 484, *supra*).