Howard A. Zeller, J.
The Erie Canal connecting the Hudson River at Albany with Lake Erie at Buffalo was completed in 1825.[1] Along its 363-mile length was a path on one bank or berm upon which teams of mules and horses trod pulling and towing scows, boats, bullheads and packets. A controversy exists as to the ownership and right to use approximately one mile of this former towpath. The canal lands from Dewitt, near Syracuse, to Rome were recently set aside for and designated as public park and recreation areas under the jurisdiction of the State Office of Parks and Recreation and the old towpath now is used by hikers, bicycle riders, fishermen and snowmobile operators. Defendants own parcels of real property in the Town of Sullivan, Madison County, abutting a portion of the Canal lands.
Plaintiff State of New York seeks a judgment declaring that title to these canal lands is vested in the State and that *45 defendants have no right, title or interest therein nor any right to maintain encroachments thereon or to go on or use the same except in compliance with the laws, rules and regulations pertaining thereto. The State asks that defendants be permanently enjoined from erecting, using or maintaining any private structure upon these canal lands and be directed to remove any structures encroaching upon such lands. The State also requests defendants be permanently enjoined from going on or using these canal lands for their own private purposes and from continuing any such use by them heretofore made in derogation of or as might interfere with the rights of the State and of the public in these lands.
Defendants’ answers admit their use of the towpath for their private purposes and assert these canal lands were used by their predecessors in title and by the public generally as a public way. Defendants claim such private use of the towpath long anteceded the establishment by maps of the State’s rights in and to the lands within the "Blue Line” and that thus they have acquired the prescriptive right to continue to use the towpath for their own private purposes; and they assert the State is equitably estopped from prohibiting or limiting these uses because of defendants’ "economic necessity”.
On appeal in this action from an order of the Supreme Court, Special Term, entered in Madison County in 1973 denying plaintiffs motion for summary judgment, the Supreme Court, Appellate Division affirmed (45 AD2d 779), but stated plaintiff was correct that adverse possession cannot be used against the State, citing Smith v People (9 AD2d 205). However, the Appellate Division then wrote: "plaintiff also seeks injunctive relief to enjoin the defendants 'from going on and utilizing the said lands for their own purposes’ and to compel the removal 'from the said lands all buildings [and] structures * * * encroaching upon or interfering’ with the subject land. Whether the plaintiff is entitled to this relief against any or all of the defendants cannot be decided on the instant record. There are presented issues as to title and defendants’ possible rights of use of the land involved which must be explored at a plenary trial.” (45 AD2d 779).
A plenary trial was held.
The lands involved are owned separately by defendants and together constitute a roughly triangular tract bordered on the west and south by Erie Canal lands and easterly by Chittenango Creek. The tract is bordered on the north by McGraw *46 Road. From south to north, the individually owned parcels belong to Button, Brownell, Tierney and Case. The Case property has frontage on McGraw Road.
Defendant Button owns four acres of unimproved land which he uses for recreational purposes only and gains access to it by walking over the towpath. There is no public roadway to this property. A quitclaim deed to him recites the land is bounded "on the south by Erie Canal”. Defendant Brownell’s 20 acres of bare land are not accessible by public highway and he has used the towpath to haul top soil from his acreage. The deed to him sets a line along the canal lands with a line point in the "toe of Berm Bank of the enlarged Erie Canal”, and refers to both the Blue Line and Map Sheet No. 377 (1927 survey).
Peter Tierney, predecessor in title to defendant Tierney, was grantee in a 1906 deed which refers to a line point as being a "stake on tow-path of Erie Canal * * * thence on tow-path” to a point. Earlier deeds in this chain of title recite the line to be the towing path of the Erie Canal before enlargement or "the line of said canal”.[2] The "enlargement” was a sovereign taking. The Tierney family has farmed their 125 acres as a single farm, 75 acres of which, with the family residence, is on the westerly side of the Erie Canal and 50 acres is on the easterly side. The 50 acres are not accessible by public highway and the Tierneys have always gotten to it by using the towpath.
Defendant Case’s grandfather, Archibald D. Case, acquired the Case farm in 1904 by deed which recites the Blue Line as its westerly boundary. He had had previous experience with the significance of the Blue Line as marking the bounds of canal lands. In 1900 he had been served a notice of permanent appropriation of other lands of his, and a map,[3] to increase the Blue Line bounds. The Case farm consists of five parcels. The residence and two of the parcels are located on Bolivar Road to the west of the canal and are not here involved. The other parcels are to the east of the canal and do have frontage on a public highway. The Case barn is mostly situated on one of the parcels east of the canal although some 13.9 to 16.4 feet of the barn and a silo are actually located within the Blue Line *47 of the Erie Canal. This barn has been there since 1882, has been used for farm purposes and is now used for storing hay and keeping a pony and some riding horses. The towpath is used about 30 days a year to get to the barn.
The Central New York State Park extends from Dewitt to Rome with the towpath as the main part designated for recreational use. It is barricaded at various places to prevent vehicles from using the towpath. A fence was erected by the Park Commission with a gate east of Bolivar Road and on a temporary basis defendants Case, Tierney and Brownell have been given keys to the gate to allow them to open the gate and to move farm vehicles and equipment over the towpath to their properties.
The concept of and the State’s title to the lands constituting the old Erie Canal dates back to the enactment of chapter 262 of the Laws of 1817 (See, also, L 1816, ch 237).[4] Subdivision 13 of section 2 of the Canal Law states " 'Blue Line’ shall mean the boundary of canal lands owned by the state previous to the approval of chapter one hundred forty-seven, laws of nineteen hundred three”. Subdivision 14 states " 'Old Canal Lands’ shall mean canal lands lying within the blue line”. The canal lands in this present litigation are "Old Canal Lands”, as "enlarged” prior to 1903, and first came into active use in 1820 when the Erie Canal opened to navigation between Utica and Rochester.[5]
A survey of the subject area of the canal lands was made for the State in October, 1975. The Blue Line as shown on the 1975 survey maps was based upon a prior State survey made in 1927, and recorded maps and on monuments found on the properties. This Blue Line established by the 1927 and 1975 maps conclusively demarcates the common bounds of the State’s and defendants’ lands.
Chapter 147 of the Laws of 1903, expressly provides for the "improvement” of the then "present” Erie Canal, section 3 thereof establishing a new or "improved” route for it that expanded the existing canal use of Oneida Lake as part of the "improved” Erie Canal. In 1918 it was officially declared *48 complete throughout its length and since has been known as the New York State Barge Canal System.
However, section 3 of Chapter 147 of the Laws of 1903, provides that the portion of the then Erie Canal between Rome and the Butternut Creek feeder just east of Syracuse (Dewitt) "shall be maintained as a canal and feeder”. The canal lands involved in this case are part of this portion of the Erie Canal. By 1900 the standard surface water width of the "enlarged” Erie Canal was 70 feet and the Blue Line was 20 to 30 feet away from the canal water.
The new "improved” route legislated in 1903 made extensive use wherever possible of lakes and navigable rivers and engine propulsion became an economic imperative after 1918. Then the "improved” canal accommodated freight haulage without transfer onto both the Great Lakes and the Atlantic seaboard. Horse and mule teams on the towpath regularly pulled barges on the New London, Higginsville, Syracuse section of the Erie Canal through 1918. But barge traffic on this section of the canal rapidly diminished due to its diversion to Oneida Lake and probably was terminated by 1921, marking the end of navigational use of the towpath by horses and mules.
However, the 1903 legislation also directed that this entire portion of the Erie Canal be maintained as a feeder. It is still in canal use as a feeder to supply waters to the canal system from DeRuyter Reservoir, Erieville Reservoir, Cazenovia Lake and Chittenango Creek in Madison County and from James-ville Reservoir, the Fayetteville Feeder and Butternut Creek in eastern Onondaga County.
There are provisions in the Constitution and the law for abandonment and disposition by sale of canal lands no longer necessary for canal purposes. (See, e.g., NY Const, art XV, § 2; Canal Law, §§ 50, 51; Smith v People, 9 AD2d 205, supra.) But obviously, the subject portion of old canal lands is still necessary and useful for canal purposes and now is also dedicated otherwise to the use of the public.
By chapter 478 of the Laws of 1966, the Legislature authorized the Superintendent of Public Works to transfer jurisdiction over this section of the old Erie Canal lands to the Conservation Department for the development of a public park. By Chapter 398 of the Laws of 1967, amending the Conservation Law, jurisdiction over these Canal lands was established in the Central New York State Park Commission *49 which was placed under the Office of Parks and Recreation. (L 1972, ch 660 [Parks and Recreation Law].)
However, flowage rights to the canal high water mark in those lands are specifically reserved to the Department of Public Works and forbidden are park improvements that would impede the flow of water for canal purposes. Jurisdiction over any of these lands that cease to be used for park purposes is directed to revert to the Department of Public Works. The utilization of these canal lands, as distinguished from the waterway, for State park purposes does not alter the sovereign nature of the State’s holding.
The intent of the State and the Legislature at all times has been and continues to be to hold this portion of the old Erie Canal lands for sovereign public purposes and as such it is inalienable. (NY Const, art XV, § 1; Banner Milling Co. v State of New York, 117 Misc 33, 40.)
Chapter 199 of the Laws of 1910 required a resurvey and mapping of the old unabandoned canal lands as "enlarged” but not included within the lines of the "improved” canal developed under chapter 147 of the Laws of 1903, and thereafter known as the New York State Barge Canal System. The State in 1927 thus resurveyed and made two maps of the pertinent Madison County section of the old canal lands showing the Blue Line marking the State land boundaries and the adjacent owners.[6] Chapter 199 did not require such maps to be filed with a county clerk, although these 1927 maps were filed in the Madison County Clerk’s Office. They are titled in part "Map of a portion of Erie Canal Lands belonging to the State”. These maps are merely presumptive evidence of the State’s actual fee title to the canal lands shown and were neither made nor filed with direct relation to acquisition of these canal lands. (Canal Law, §§ 24, 25; L 1816, ch 237; L 1817, ch 262; L 1837, ch 451; L 1866, ch 657; L 1894, ch 338, §§ 4, 5; L 1904, ch 335; L 1906, ch 365; L 1909, ch 13, §§ 4, 5 [Canal Law].)
The legislative birth of the Erie Canal is found in chapter 237 of the Laws of 1816, that appointed Canal Commissioners to "devise and adopt such measures * * * to effect the communication, by means of canals and locks, between the navigable waters of Hudson’s river and lake Erie”. These commissioners were expressly directed "to take to the people of this state *50 such grants and conveyances * * * to vest a good and sufficient title in the said people * * * for the [canal] purposes”.
By chapter 262 of the Laws of 1817 the Legislature expanded the development of this canal from Lake Erie to the Atlantic Ocean and continued and enlarged the duties of the Canal Commissioners appointed in 1816. Subdivision III of chapter 262 expressly empowered these commissioners to appropriate any lands or waters not granted or conveyed by good and sufficient title for necessary canal purposes and "the fee simple of the premises, so appropriated, shall be vested in the people of this state.” (See, also, L 1819, ch 105; L 1903, ch 147; L 1904, ch 335; Rexford v Knight, 15 Barb 627.)
The State’s vested title to old mainline canal lands and enlargements was never established by a filed map as defendants assert. Rather, it was established under legislation by conveyance or by entry, survey and indemnified appropriation on notice to the landholders and, if necessary, upon appraisal of those lands deemed required for canal purposes. The bounds of any such lands taken for canal purposes were known well over a century ago as the "Blue Line”. A filed map was but evidence of the actual fact of proper appropriation for sovereign use under legislated procedures. (See, e.g., Rexford v Knight, 15 Barb 627, supra.)
The Laws of 1894 (ch 338, §§ 4, 5) is the first legislation found that required a map showing the "Blue Line” bounds to be filed with the county clerk of the county in which a canal "now or hereafter” is built. But section 70 of chapter 338 clearly shows that any appropriations for such canal construction were complete upon filing a certified map of the survey of the lands appropriated in the office of the State Engineer and service of notice of that filing upon the owner of the land taken. Filing on notice to the affected land owner of such a map with one or more State offices was a standard pattern of perfecting appropriations. (See L 1903, ch 147, § 4; L 1906, ch 365; L 1909, ch 13, § 80; Canal Law, § 40, subd 7, prior to amdt by L 1944, ch 633.)
The full fee title of this portion of the Erie Canal, as enlarged, is vested in the State of New York and defendants have no title or valid claim thereto. These defendants may not legally assert private rights by adverse possession in or to these canal lands. (See Hinkley v State of New York, 234 NY 309; Burbank v Fay, 65 NY 57; Smith v People, 9 AD2d 205, supra.) These defendants could not acquire by use an ease *51 ment over or any other private prescriptive rights in or to these State lands held in fee for sovereign purposes. (Donahue v State of New York, 112 NY 142; Burbank v Fay, supra; Town of Vienna v State of New York, 203 Misc 1053; Everett v State of New York, 166 Misc 58.)
Since at least 1820 (L 1820, ch 202) private use of the towpath had been prohibited. However, chapter 346 of the Laws of 1891 provides that when any canal or feeder is constructed so as to render lands inaccessible from a highway except by erection of a bridge, the Superintendent of Public Works could issue a permit to use the towpath or the opposite canal bank to land owners so affected, with such use to cease upon the erection of a suitable bridge.
This same provision is found in section 176 of chapter 338 of the Laws of 1894 and in section 186 of the Canal Law of 1909, but appears to have been omitted in the Canal Law enacted in 1939. But section 116 of the Canal Law of 1894, section 126 of the Canal Law of 1909 and section 66 of the current Canal Law restrict the construction of a farm bridge where "the necessity of convenience” of such bridge arose from the division or acquisition of property subsequent to the construction of a canal or feeder.
Defendant Case’s parcel was the only defendant’s parcel to have had a bridge over the canal. However, there was and is full access to this parcel abutting the canal land from a bordering public highway, precluding the probability of issuance of a towpath permit to the Cases. There are no old records available of any permits issued by the State for use of Erie Canal lands and such permits were and now are revocable. (Canal Law, § 100.) But as to defendants Tierney and Brownell the court is urged to presume first that canal construction rather than subsequent conveyances cut off their access from a public way and secondly that towpath permits were issued their predecessors in title and never revoked. There is no evidence to support an inference that such permits were issued to defendants’ predecessors in title and are still in effect. Nor does the possibility of an economic impact estop the State from denying all private use of the towpath. (Matter of Helms v Diamond, 76 Misc 2d 253.)
Defendants Case, Tierney, Brownell and Button should be enjoined from using the towpath except for purposes permitted the general public. To give time to some of these defendants to possibly find other means of access by vehicle to their *52 properties the Park Commission should continue to furnish them keys to the gate and permit them to move farm vehicles over the towpath to their properties under proper limits until November 1, 1976.
The canal boárd was early authorized to issue revocable permits for the erection of commercial and manufacturing buildings on canal lands by adjoining land owners. (See L 1840, ch 292.) Later laws included mills and warehouses. (See L 1866, ch 657; L 1894, ch 338, § 11; Canal Law of 1909, § 16.) This provision was omitted in the Canal Law of 1939. But no statutory authorization has been found to grant permits to erect farm structures on canal lands. The Case barn was erected in 1882 and the silo that may have been erected later are simply encroachments on canal lands.
For at least a century, the Canal Board or the Superintendent of Public Works has been authorized to remove or cause to be removed all unpermitted encroachments from canal lands. (See L 1866, ch 657; L 1894, ch 338, § 75; Canal Law of 1909, § 85; Canal Law, § 42.) And "long continuance of such encroachments * * * cannot destroy the public right or take away the authority of the public officers to remove and abate them”. (St. Vincent Female Orphan Asylum v City of Troy, 76 NY 108, 114.)
As previously noted, the State’s dedication of these canal lands for park and recreation use continues the sovereign nature of the State’s holding. Encroaching private buildings or private use of such lands are in derogation of the State’s interest in and in diminishment of State lands held for sovereign uses. This amounts to appropriation by private citizens for private use of such State lands. (Burbank v Fay, 65 NY 57, supra.)
The State should be empowered and authorized to remove or cause to be removed the Case silo and that portion of the Case barn situated within the Blue Line. In view of the many years the State has tolerated the silo and part of the barn on State lands any procedures to remove or cause to be removed these structures should be delayed to November 1, 1977.
No amount of actual damages has been proved by the State, and the request for damages should be dismissed.
No costs or disbursements may be taxed.

. Sources of historical data: various Sessions Laws; New York State Gazetteer, 1860, J. H. French (R. Pearsall Smith, Syracuse); 1966 Report of the Old Erie Park Study Committee; Canal Days in America, H. S. Drago (C. N. Potter, Inc., New York); and The Erie Canal, R. K. Andrist (American Heritage Pub Co, Inc., New York).

. See, deeds, Crater to Pennock in Book of Deeds BM (p 100 [1846]), and in Book of Deeds CL (p 183 [1858]); Pennock to Crater, Book of Deeds 128 (p 483).

. Map No. 109, Map Drawer 7, Madison County Clerk’s Office; see, also, Map No. 121, Map Drawer 7.

. The possibility of "making canals” had been given earlier legislative consideration. (See L 1791, ch 53; L 1972, ch 40.)

. The enlargement program in the last part of the 19th century of the subject portion of the Erie Canal was tapered off in the 1890’s because changes were under consideration, partly because of the impact of rail transportation which had earlier contributed to the disuse of some lateral canals.

. Map Sheets Nos. 377 and 378.