■ In the Matter of Dominick Angiolillo, Jr., et al., Respondents, v Town of Greenburgh et al., Respondents, and WBRC Corporation et al., Appellants. [801 NYS2d 629]—

In a hybrid proceeding pursuant to CPLR article 78 challenging the issuance of building permits to construct five single-family homes on the subject property, and action for a permanent injunction and judgment declaring that the subject property is inalienable parkland which must be restored to its natural condition, WBRC Corporation and Baker Roofing appeal, as limited by their brief, from so much of an order of the Supreme Court, Westchester County (LaCava, J.), entered July 23, 2004, as granted the petitioners-plaintiffs' motion, denominated by the court as one for leave to reargue the petition, but which was, in effect, a new motion for a mandatory permanent injunction, and directed WBRC Corporation and Baker Roofing to demolish five partially-constructed, single-family homes and restore the underlying property to its natural condition.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, and the motion is denied.

In 2000 the petitioners-plaintiffs (hereinafter the petitioners) commenced this hybrid proceeding, pursuant to CPLR article 78 challenging the issuance of building permits to construct five single-family homes on the subject property, and action for a permanent injunction and judgment declaring that the subject property is inalienable parkland which must be restored to its natural condition against the appellants as landowners and the Town of Greenburgh and its Building Inspector. The hybrid petition and complaint alleged that the subject property constituted parkland for which "[n]o subdivision exists," and sought, inter alia, a mandatory injunction to "restore the parklands to their natural condition as they existed prior to the start of construction."

In a judgment dated July 11, 2000, the Supreme Court, Westchester County (Leavitt, J.), determined that the subject property was not "dedicated to use, as a 'park.'" The Supreme Court nevertheless concluded that the building permits were null and void on the ground that "[t]he lots for which buildings

permits were issued did not exist on the subdivision plat which had been approved in 1929." Subsequent to the filing of the original subdivision map in 1929, the Town of Greenburgh amended its zoning ordinance to increase the minimum lot size for the construction of a single family home from 2,500 to 7,500 square feet. The appellants had combined whole or contiguous portions of substandard lots to form conforming lots. The Supreme Court held that redrawing the lot lines required subdivision approval from the Planning Board of the Town of Greenburgh (hereinafter the Planning Board).

The petitioners' request for injunctive relief was denied. However, the Supreme Court granted "leave to reargue" if the developers did not apply to the Planning Board for approval of the new subdivision plat on or before September 18, 2000, or their application was not approved by the Planning Board and new building permits were not issued on or before January 8, 2001. The Supreme Court stated that "[i]n the event that an application for approval of a new subdivision plat is denied by the Planning Board before January 8, 2001, petitioners may move for reargument immediately upon the occurrence thereof."

In compliance with that determination, the appellants filed an application for approval of a new subdivision plat with the Planning Board on September 14, 2000. The municipality deferred consideration of the application and related applications pending this Court's resolution of the appeal and cross appeal from the judgment dated July 11, 2000. This Court affirmed that determination insofar as appealed and cross-appealed from by opinion and order dated December 3, 2001 (*see Matter of Angiolillo v Town of Greenburgh*, 290 AD2d 1 [2001]).

After the determination of this Court on December 3, 2001, the Planning Board issued a conditional negative declaration pursuant to ECL article 8. By letter to the Planning Board dated May 30, 2002, the petitioners' attorney, who resides on the same street as the subject property, who is a member of the Westchester County Legislature and who is a former member of the Town Board of the Town of Greenburgh, stated that the subject property was in a "critical environmental area" created by a resolution of the Town Board passed on September 30, 1987, for hilltops with a natural elevation of 400 or more feet above sea level; therefore "[t]he Planning Board must, as a matter of law, declare the proposed development a Type I action." This allegation was not raised in the petitioners' original hybrid petition and complaint.

On July 24, 2002, the Planning Board rescinded the negative declaration on the ground that the subdivision was in a "critical environmental area" created by a resolution of the Town Board passed on September 30, 1987, for hilltops with a natural elevation of 400 or more feet above sea level. A dispute arose between the appellants and the Planning Board as to whether the resolution was enforceable or applicable to the subject property. The Planning Board did not grant or deny the application for approval of the new subdivision plat.

By notice of motion dated March 19, 2004, the petitioners moved for renewal and reargument on the ground that the Planning Board still had not ruled on the application. In the order and judgment appealed from, the Supreme Court, Westchester County (LaCava, J.), granted the petitioners "reargument," and upon reargument, directed the appellants to demolish the five partially-constructed houses and restore the underlying property to its natural condition. Justice LaCava held that the petitioners were entitled to the requested relief on the ground that former Justice Leavitt had established that January 8, 2001, was an "unconditional and firm" deadline.

Contrary to this denomination, the petitioners' motion for renewal and reargument, which was made nearly four years after judgment was entered in the hybrid proceeding and action, was not a motion for "reargument" (see CPLR 2221 [d]). Nor should the motion be treated as one for renewal because it was based on additional material facts that developed during a period of nearly four years (see CPLR 2221 [e]). Under these circumstances, the motion is a new and independent motion for a mandatory injunction (see Weinstein-Korn-Miller, NY Civ Prac ¶ 5701.24).

As a general rule, a mandatory injunction to remove or destroy a building is a drastic remedy which will only be granted if the benefit to the movant if the injunction were granted and the irreparable harm to the movant if the injunction were not granted substantially outweighs the injury to the party against whom the injunction is sought (see Forstmann v Joray Holding Co., 244 NY 22 [1926]; Sunrise Plaza Assoc. v International Summit Equities Corp., 288 AD2d 300 [2001]; Medvin v Grauer, 46 AD2d 912 [1974]). The petitioners failed to establish grounds for a mandatory injunction.

Further, under the circumstances, the petitioners would be unable to establish grounds for a mandatory injunction since their motion is premature. The original basis asserted in the hybrid petition and complaint for restoring the property to its natural condition, to wit, that the subject property constituted

parkland, was previously rejected by this Court (*see Matter of Angiolillo v Town of Greenburgh, supra*). The question of whether the construction of all or some of the structures will be approved by the appropriate municipal entities has not been resolved.

The prior judgment dated July 11, 2000, granted the petitioners leave to make a further motion "[i]n the event that an application for approval of a new subdivision plat is denied by the Planning Board before January 8, 2001." However, the Planning Board still has not acted on the application.

Since the Planning Board is not a party to this hybrid proceeding and action, to suggest that the judgment dated July 11, 2000, mandated action by the nonparty Planning Board by a date certain would be illogical. Rather, that judgment required the appellants to file their application with the Planning Board on or before September 18, 2000, which they in fact did, and proceed in good faith with the objective of attaining a resolution of the issue by January 8, 2001.

When no resolution was achieved by January 8, 2001, the petitioners took no action and fully participated in the subdivision review process. In so doing, they waived their right to any further action until a determination is reached by the Planning Board. Adams, J.P., Crane, Goldstein and Skelos, JJ., concur.