*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  March 31, 2016                    521570
_____

NEW YORK STATE ELECTRIC &
    GAS CORPORATION,
                        Appellant,

        v                                MEMORANDUM AND ORDER

COUNTY OF CHEMUNG et al.,
                        Respondents.
_____

Calendar Date:  February 19, 2016

Before:  Peters, P.J., Garry, Rose, Lynch and Clark, JJ.

_____

        Brickley, Sears & Sorrett, PA, Boston, Massachusetts
(Joseph G. Curran of Ward Greenberg Heller & Reidy LLP,
Rochester, of counsel), for appellant.

        Barclay Damon, LLP, Elmira (Bryan J. Maggs of counsel), for
County of Chemung, respondent.

        Lynch Law Office, PLLC, Syracuse (Ryan L. Abel of counsel),
for Town of Horseheads, respondent.

        Lippman O'Connor, Buffalo (Gerard E. O'Connor of counsel),
for Village of Horseheads, respondent.

_____

Lynch, J.

        Appeal from an amended order of the Supreme Court (O'Shea,
J.), entered June 4, 2015 in Chemung County, which, among other
things, granted defendants' motions to dismiss the complaint.

        Plaintiff provides natural gas to residential and
commercial customers in the Town and Village of Horseheads,

Chemung County.  The natural gas is distributed through gas mains, pipes and equipment owned by plaintiff that were first installed underground during the mid to late nineteenth century. Defendant County of Chemung owns and operates the Chemung County Sewer District, which designed and constructed a sewer system in the 1960s in the Town and Village of Horseheads, which included underground main and lateral pipes.  Defendants Town of Horseheads and Village of Horseheads each provide water to their residents through a system of underground water mains and service lateral pipes.  These structures were also constructed in the 1960s.  In 2005 and again in January 2011, there were gas explosions and fires at separate homes in the Village (see Peterson v New York State Elec. & Gas Corp., 115 AD3d 1029, 1029 [2014]).  The subsequent investigation revealed that the explosion was caused by a leak in the lateral gas line that led from the gas main to the house, and the leak was caused by stress corrosion cracking in the lateral line.

Following the 2011 explosion, plaintiff hired Lucius Pitkin, Inc. (hereinafter Pitkin), a metallurgical consulting firm, to assess the fitness of its medium pressure gas service lateral pipes located in the Town and Village.  Pitkin analyzed 67 lateral pipes; 49 were selected because they were proximate to water and/or sewer lines and 18 were selected at random.  After investigating all 67 pipes, Pitkin issued a report in November 2013 wherein it concluded that 39 gas lateral pipes located near sewer and/or water mains exhibited certain damages, including damage to pipe coating, accompanied by "loss of metal pipe wall thickness" and/or "significant deformation."  In contrast, Pitkin concluded that of the 18 randomly selected pipes, 12 pipes that were not located near water and/or sewer mains pipes did not exhibit comparable damage.  Pitkin recommended that plaintiff replace all the service laterals in the Town and Village that were adjacent to water and/or sewer utilities.  Plaintiff accepted the recommendation and the pipes have now been replaced.

In January 2014, plaintiff filed essentially identical notices of claim against each defendant.  By these notices, with reference to Pitkin's review and the 2005 and 2011 explosions, plaintiff advised that it was seeking to recover for property damages resulting from, among other things, defendants'

interference with plaintiff's lines and/or improper construction or maintenance of their sewer and/or water mains. In June 2014, defendants questioned plaintiff's representative at a hearing held pursuant to General Municipal Law § 50-h. In July 2014, plaintiff commenced this action seeking, among other things, compensatory damages for repairing all one-inch and 1¼-inch steel service laterals in the Town and Village and a permanent injunction requiring defendants to prevent further damage to plaintiff's service laterals. Defendants each moved to dismiss the complaint. Plaintiff opposed the motions to dismiss and cross-moved to amend the notices of claim to include all of the addresses where it had replaced service laterals. Supreme Court granted defendants' motions to dismiss and denied plaintiff's cross motion. Plaintiff now appeals.

A party seeking to commence a tort action against a municipal corporation must first serve a notice of claim that states "the time when, the place where and the manner in which the claims arose" (General Municipal Law § 50-e [2]). The purpose of the notice is "[t]o enable authorities to investigate, collect evidence and evaluate the merit of a claim" (Brown v City of New York, 95 NY2d 389, 392 [2000]; see O'Brien v City of Syracuse, 54 NY2d 353, 358 [1981]). The notice must "sufficiently describe when and where a particular accident took place, but does not have to be detailed with literal nicety or exactness" (Gagnon v City of Saratoga Springs, 14 AD3d 845, 847 [2005] [internal quotation marks and citations omitted]). Further, "[d]eficiencies in the notice, if any, may be cured by testimony provided at a General Municipal Law § 50-h hearing" (id.).

Here, plaintiff advised that its claim was that the Village and Town "[n]egligent[ly] install[ed], design[ed], engineer[ed], construct[ed], maintain[ed], servic[ed], operat[ed] and/or repair[ed] . . . the water main, water lines, water manhole, water structures, drainage systems or other pipes, utilities or public works owned or controlled" by the Village and Town; "[i]nterfer[ed] . . . deflect[ed] . . ., undermin[ed] . . ., damag[ed] . . . and/or improper[ly] repair[ed] [plaintiff's] gas utilities" throughout the Village and Town; and "[f]ail[ed] to safeguard against" or to notify plaintiff of these damages.

Purusant to the notice of claim, the affected water structures and gas utilities were located "throughout [the Village and Town] generally, including but not limited to the properties identified [in the Pitkin report]." As to the County, plaintiff claimed that it "[n]egligent[ly] install[ed], design[ed], engineer[ed], construct[ed], maint[ained], service[d], operat[ed] and/or repair[ed its] sewer main, sewer lines, sewer manhole, sewage structures, drainage system or other pipes, utilities or public works owned or controlled by [the County] . . .[, i]nterfer[ed] with, deflect[ed] . . ., undermin[ed] . . ., damage[d] and/or improper[ly] repair[ed] [plaintiff's] gas utilities" and that the County "[f]ail[ed] to safeguard against" and notify plaintiff of such damages. As with the Town and Village, the affected sewer structures and gas utilities were located "throughout Horseheads, New York generally, including but not limited to the properties identified [in the Pitkin report]."

Following receipt of the notices of claim, defendants demanded a hearing pursuant to General Muncipal Law § 50-h. The Pitkin report was provided and made a part of the hearing record. Documented therein were the three categories of damages discovered — deformation of the service lateral, coating damage to the service lateral and reduction of pipe wall thickness. Each of the 39 service laterals exhibited one or more of these damages and each was proximate to either a water main, sewer main or both that had been installed beneath the gas laterals. Plaintiff also produced its employee, Robert Letson, who was present during the Pitkin excavation project. Letson testified that he observed the majority of the 67 excavations and confirmed that, during the excavation project, asserted third-party damage was discovered at 39 of the selected locations. Letson was not able to tell when the specified damage was done and was able to assume only that, because the water and sewer lines went in after the gas lateral lines, there was some third-party excavation done after the gas laterals were installed. Letson further confirmed, without knowledge of specifics, that based on state regulation, plaintiff undertook to replace certain laterals that had been installed before 1971. When asked what third-party activity caused the damage to the laterals identified in the Pitkin report, Letson testified that it could have been improper backfilling, improper excavation, improper support or actual

contact between a backhoe or shovel and the pipe.

Initially, we find that plaintiff's notices of claim, as supplemented by the General Municipal Law § 50-h hearing and the Pitkin report, were sufficient to permit the municipalities to investigate the claims asserted with regard to the 39 service laterals identified in the notices and the report. In our view, however, the notices were not sufficient to permit inclusion of the approximately 800 additional properties as alleged in the complaint. Therefore, plaintiff's action must be limited to the 39 service laterals identified in the January 2014 notices of claim (see O'Brien v City of Syracuse, 54 NY2d at 358).

To the extent that we have found that plaintiff's notices of claim were sufficient, the further question is whether plaintiff's action with regard to the 39 laterals was timely. Pursuant to General Municipal Law § 50-i, plaintiff's action for damages to real property had to be commenced within one year and 90 days after the occurrence of the event that is the basis for the claims, not from the date the action accrued (see Klein v City of Yonkers, 53 NY2d 1011, 1012-1013 [1981]; Serkil, L.L.C. v City of Troy, 259 AD2d 920, 921-922 [1999], lv denied 93 NY2d 811 [1999]; Nebbia v County of Monroe, 92 AD2d 724, 725 [1983], lv denied 59 NY2d 603 [1983]). Further, claims against a county for "invasion of personal or property rights, of every name and nature, and whether casual or continuing trespass or nuisance and any other claim for damages arising at law or in equity" must be commenced in accordance with General Municipal Law § 50-i (County Law § 52).

Here, we agree with Supreme Court that defendants established that the events forming the basis for plaintiff's claims, the alleged interference with the gas laterals during the installation of the sewer and water systems, occurred more than one year and 90 days ago, and we reject plaintiff's claim that defendants' conduct was continuing. Although, arguably, the damage that resulted from defendants' interference continued to exist, the interference was a singular event (see Matter of Witt v Town of Amherst, 17 AD3d 1030, 1031 [2005]; Sniper v City of Syracuse, 139 AD2d 93, 95 [1988]; Nebbia v County of Monroe, 92 AD2d at 725). Put differently, even assuming that defendants'

negligent conduct occurred, it ceased once the water and sewer main construction was completed.  There was no continuing, offensive act (see Town of Oyster Bay v Lizza Indus., Inc., 22 NY3d 1024, 1031-1032 [2013]; compare Bloomingdales, Inc. v New York City Tr. Auth., 13 NY3d 61, 65-66 [2009]).  Accordingly, plaintiff's damage claims arising from defendants' allegedly negligent construction occurring in the 1960s are time-barred (see Harrington v County of Suffolk, 102 AD3d 923, 924 [2013]; Liston v Town of Newburgh, 90 AD3d 861, 862 [2011]).

On the other hand, we find that plaintiff's claims that defendants failed to maintain the sewer and water mains are timely.  Generally, each defendant has a continuing duty to maintain its systems (see De Witt Props. v City of New York, 44 NY2d 417, 423 [1978]; Brandenburg v County of Rockland Sewer Dist. #1, State of N.Y., 127 AD3d 681, 682 [2015]).  To the extent that plaintiff claims that its damages were caused by defendants' failure to maintain its sewer and water mains, the breach of this ongoing duty is the "event" that forms the basis for the claim (see Kiernan v Thompson, 73 NY2d 840, 841 [1988]).  Accordingly, Supreme Court should not have dismissed this part of the first cause of action as untimely.

By its second cause of action, plaintiff alleges that defendants' "voluntary acts have and continue to encroach on, impede and trespass upon [its] rights-of-ways . . . and on its gas facilities."  "The essence of trespass is injury to the right of possession, and such trespass may occur under the surface of the ground.  A person need not have title to the property but must simply have sufficient property rights to maintain an action for trespass" (Bloomingdales, Inc. v New York City Tr. Auth., 13 NY3d at 66 [citation omitted]).  Here, at least arguably, plaintiff identified instances of continuing interference with its utilities, to wit: a log or pole fastened to a service lateral and the presence of electrical tape.  In Town of Oyster Bay v Lizza Indus., Inc. (supra), relied upon by Supreme Court, the rejected trespass claim was based on continuing defects, not continuing interference or encroachment.  Here, in contrast, plaintiff has alleged that defendants placed these materials on the service laterals and that the continuing presence of same caused some damage.  To this limited extent, the claim for

continuing trespass is timely and should not have been dismissed (see Bloomingdales, Inc. v New York City Tr. Auth., 13 NY3d at 66; 509 Sixth Ave. Corp. v New York City Tr. Auth., 15 NY2d 48, 52-53 [1964]).  For the same reasons, we find that plaintiff's causes of action for public and private nuisance are timely (see Bloomingdales, Inc. v New York City Tr. Auth., 13 NY3d at 66).

Supreme Court properly dismissed plaintiff's constitutional takings and inverse condemnation claims.  "On a motion to dismiss for failure to state a cause of action, courts assume the facts alleged to be true, view them liberally and in the light most favorable to the plaintiff, and assess whether the allegations set forth all of the elements of any cognizable cause of action" (Torrance Constr., Inc. v Jaques, 127 AD3d 1261, 1263 [2015]; see McNeary v Niagara Mohawk Power Corp., 286 AD2d 522, 523-524 [2001]).  Relevant here, the Fifth Amendment's Takings Clause, applied to New York through the Fourteenth Amendment, "prohibits the government from taking private property for public use without just compensation" and "even a minimal 'permanent physical occupation of real property'" may be actionable (Palazzolo v Rhode Island, 533 US 606, 617 [2001], quoting Loretto v Teleprompter Manhattan CATV Corp., 458 US 419, 427 [1982]; see US Const, 5th, 14th Amends).  A cause of action for inverse condemnation may be stated where it is "alleged that a defendant 'intruded onto plaintiff's property and interfered with [its] property rights to such a degree that the conduct amounts to a constitutional taking'" (McNeary v Niagara Mohawk Power Corp., 286 AD2d at 524, quoting O'Brien v City of Syracuse, 54 NY2d  at 357 [brackets omitted]).  Inverse condemnation is a basis to obtain damages where a municipality has permanently taken property without exercising its eminent domain authority and compensating the property owner (see Corsello v Verizon N.Y., Inc., 18 NY3d 777, 786 [2012]).  As such, there must be "permanent physical occupation of [the] plaintiff's property amounting to the exercise of dominion and control thereof" (McNeary v Niagra Mohawk Power Corp., 286 AD2d at 524 [internal quotation mark, brackets and citation omitted]; see Greece Ridge, LLC v State of New York, 130 AD3d 1559, 1560-1561 [2015]).  Here, plaintiff alleges that as a result of defendants' interference, it was "deprived of all economic value and benefit of [the service laterals]."  As set forth above, however, even if we were

to accept that defendants' conduct interfered with the service laterals, based on the Pitkin report and the testimony at the General Municipal Law § 50-h hearing, plaintiff has no evidentiary basis to claim that such interference was either permanent or of the requisite magnitude (see id.).

Finally, Supreme Court properly dismissed plaintiff's cause of action seeking permanent injunctive relief. A valid claim for a permanent injunction may exist where there is both irreparable harm and no adequate legal remedy (see McDermott v City of Albany, 309 AD2d 1004, 1005 [2003], lv denied 1 NY3d 509 [2004]). Here, we discern no basis for prospective relief inasmuch as plaintiff has repaired the damaged service laterals, and this action is supported by the basic premise that defendants had and have no authority to interfere with plaintiff's facilities. Under the circumstances, we agree that plaintiff has an adequate remedy and is not entitled to injunctive relief.

We have considered plaintiff's remaining claims and find them to be either without merit or not preserved for our review.

Peters, P.J., Garry, Rose and Clark, JJ., concur.


ORDERED that the amended order is modified, on the law, without costs, by reversing so much thereof as granted defendants' motions to dismiss the complaint; motions denied as to the third and fourth causes of action and partially denied as to the first and second causes of action as more specifically set forth in this Court's decision; and, as so modified, affirmed.


ENTER:

*Robert D Mayberger*

Robert D. Mayberger
Clerk of the Court