Malinski v State of New York (2025 NY Slip Op 02833)

Malinski v State of New York

2025 NY Slip Op 02833

Decided on May 8, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 8, 2025

CV-23-2241
[*1]James Malinski, Appellant,
v
State of New York et al., Respondents, et al., Defendant.

Calendar Date:March 24, 2025

Before:Garry, P.J., Clark, Lynch, Fisher and Powers, JJ.

Maynard, O'Connor, Smith & Catalinotto, LLP, Albany (Bridget M. Schultz of counsel), for appellant.
Letitia James, Attorney General, Albany (Owen Demuth of counsel), for respondents.

Lynch, J.
Appeal from that part of an order of the Supreme Court (Adam Silverman, J.), entered November 21, 2023 in Rensselaer County, which, among other things, granted a motion by defendants State of New York and Department of Transportation for summary judgment dismissing the complaint against them.
In 1980, plaintiff acquired real property in the Town of Poestenkill, Rensselaer County located on the west side of State Route 351 — a two-lane highway that runs north to south. Directly across the highway, defendant State of New York owns property immediately adjacent the east side of Route 351, abutting property owned by defendant L.J. Valente, Inc. When Route 351 was constructed in the mid 1960s, a drainage system was constructed on the State's property designed to direct water through a culvert underneath Route 351 into an existing marsh on plaintiff's property. The State holds a drainage easement for this purpose.
In 2019, plaintiff commenced this action against the State and Valente asserting causes of action for trespass, nuisance, negligence, timber trespass and violations of 42 USC § 1983 stemming from the alleged flooding of the marsh on his property. The complaint alleged that, prior to 2010, the State's property "contained a marsh and/or natural drainage area that absorbed excess rain, surface runoff from . . . Route 351 and underground water," but the State had since permitted Valente's tenants to "grade, fill, deposit debris, alter [natural drainage] and/or pollute the State['s p]roperty, resulting in the unnatural diversion of water through [the] drainage pipe that runs underneath . . . Route 351 and onto [plaintiff's] [p]roperty." Plaintiff alleged that the unnatural diversion of water through the culvert pipe significantly increased the water levels of his property's marsh, causing flooding and damage to trees and shrubs. He further alleged that, despite notifying defendant Department of Transportation about the issue, it failed to stop the actions of Valente's tenant or take remedial action.
The complaint sought monetary damages, a permanent injunction enjoining defendants from "further grading, filling, altering and/or contaminating" the State property, and an order directing defendants to "restore [plaintiff's] [p]roperty to the condition it was prior to the unnatural water diversion" and "repair or otherwise restore the State [p]roperty so that the diversion of water onto [plaintiff's] [p]roperty is reduced to the levels prior to 2010." In an amended complaint filed July 13, 2022, plaintiff expanded its trespass claim, alleging that, in August 2021, Valente "installed a white [drainage] pipe" extending to within two feet of the culvert, connected to a sump pump on Valente's property, further increasing the flow of water into the marsh on plaintiff's property.
Following joinder of issue [FN1] and discovery, the State moved to dismiss the claims against it [FN2] pursuant to CPLR 3211 (a) (2), (5) and (7). Valente, in turn, filed a motion for summary [*2]judgment dismissing the complaint. Supreme Court treated the State's motion as one for summary judgment, granted the motion in its entirety and denied Valente's motion. Noting that the Court of Claims has exclusive jurisdiction over suits for monetary damages against the State, Supreme Court granted the State's motion to dismiss the claims for monetary relief. As for plaintiff's permanent injunction request against the State, the court found that issuing such an "extraordinary remedy" was not warranted in these circumstances. As a result, the court dismissed all claims against the State. Plaintiff appeals.[FN3]
Plaintiff argues that Supreme Court erred by denying his request for permanent injunctive relief against the State at the summary judgment phase.[FN4] Plaintiff seeks two types of injunctions in this case, one which would prohibit defendants from "further grading, filling, altering and/or contaminating" the marsh on the State's property and one which would compel defendants to take remedial action to restore plaintiff's property "to the condition it was prior to the unnatural water diversion" and to restore "the State [p]roperty so that the diversion of water onto [plaintiff's] [p]roperty is reduced to the levels prior to 2010."
Permanent injunctive relief is an "extraordinary remedy to which a suitor has no absolute right but which may be granted or withheld by a court of equity in the exercise of its discretion" (Lexington & Fortieth Corp. v Callaghan, 281 NY 526, 531 [1939]; see DiMarzo v Fast Trak Structures, 298 AD2d 909, 910 [4th Dept 2002]). A movant seeking a permanent injunction must demonstrate "that there [is] a violation of a right presently occurring, or threatened and imminent, that [the movant] has no adequate remedy at law, that serious and irreparable harm will result absent the injunction, and that the equities are balanced in [the movant's] favor" (Caruso v Bumgarner, 120 AD3d 1174, 1175 [2d Dept 2014] [internal quotation marks and citation omitted]). Moreover, a mandatory injunction compelling the State to act will not be granted unless "the benefit to the movant if the injunction were granted and the irreparable harm to the movant if the injunction were not granted substantially outweighs the injury to the party against whom the injunction is sought" (Matter of Angiolillo v Town of Greenburgh, 21 AD3d 1101, 1104 [2d Dept 2005]; see Parry v Murphy, 79 AD3d 713, 715-716 [2d Dept 2010]; Brown v Nelson, 55 AD3d 317, 318 [1st Dept 2008]). Since a "permanent injunction is a final judgment," it is "normally only granted after a trial" (Moore v Ruback's Grove Campers' Assn., Inc., 85 AD3d 1220, 1221 [3d Dept 2011]). However, a court may deny a request for permanent injunctive relief as a matter of law at the summary judgment phase where no questions of fact need be resolved to determine the movant's entitlement to such extraordinary relief (see Matter of Long Is. Power Auth. Hurricane Sandy Litig., 134 AD3d 1119, 1120 [2d Dept 2015]).[*3]
We recognize that "[w]ater and debris cast upon the lands of another is actionable as a trespass" (Stewart v State of New York, 248 AD2d 761, 761 [3d Dept 1998]). Where, as here, the State has a drainage easement, a trespass can still occur when the scope of that easement has been exceeded (see Gates v AT & T Corp., 100 AD3d 1216, 1220 [3d Dept 2012]; Town of Elmira v Hutchison, 53 AD3d 939, 940 [3d Dept 2008]).
The essence of plaintiff's claim is that excess water beyond the scope of the State's easement has been diverted onto his property as a result of debris/fill placed by Valente's tenant on the State's property beginning in 2011 and continuing into 2017, as well as the additional water flowing through the white pipe. Even accepting that premise, the operative point is that these affirmative acts were performed by Valente and/or its tenant, not the State. The only affirmative act attributable to the State was cleaning out the culvert and restoring a drainage ditch in 2015 at plaintiff's request and in accord with its right to maintain the culvert under the drainage easement. As such, Supreme Court properly declined to issue the first type of injunction against the State (see Merkos L'Inyonei Chinuch, Inc. v Sharf, 59 AD3d 403, 408 [2d Dept 2009]).
Plaintiff's request for a mandatory injunction would require all defendants to take remedial action to, at a minimum, remove the debris/fill/pipe from the State property so as to restore the natural drainage in place in 2010, i.e., before Valente's tenant began to place fill on the State's property. In this regard, Supreme Court determined that the State had no obligation to implement the two remedial options recommended by plaintiff's expert, Kurt Bedore, owner of KB Engineering and Consulting, PLLC. We agree. Each of the options would require the State to create new drainage systems diverting water on the east side of Route 351 away from the culvert, which it has no obligation to do given the existing drainage easement.
Even so, the far more limited remedy would be to remove the debris/fill/pipe from the State property. Bedore opined that removing these items would alleviate the water levels on plaintiff's property and "be a significant first step in addressing the unnatural water diversion that has damaged [plaintiff's] [p]roperty." One troubling aspect of this case is that there is nothing in the record demonstrating that the State has taken any affirmative steps to have Valente remove the debris/fill/pipe from the State's own property. Correspondingly, there is no indication that Valente was authorized by the State to place these materials on the State's property. Plaintiff's grievance against the State is one of omission for having failed to address Valente's unauthorized use of State property. And yet, the claim continues against Valente. Absent a special duty — and plaintiff has not pleaded that the State owed him a special duty — the State was under no obligation to remediate its property [*4]for plaintiff's benefit (see Mangusi v Town of Mount Pleasant, 19 AD3d 656, 657 [2d Dept 2005]; Warm v State of New York, 308 AD2d 534, 536 [2d Dept 2003], lv denied 2 NY3d 703 [2004]). Under all these circumstances, we cannot conclude that Supreme Court abused its discretion in determining that plaintiff was not entitled to injunctive relief compelling the State to remediate its property.
Garry, P.J., Clark, Fisher and Powers, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: In addition to asserting several affirmative defenses, the State included a cross-claim against Valente alleging that any damages were caused solely by its conduct.
Footnote 2: The claim under 42 USC § 1983 has been discontinued with prejudice by stipulation of the parties.
Footnote 3: Valente also filed a notice of appeal but never perfected it. Accordingly, it is deemed dismissed by operation of law (see Rules of App Div, All Depts [22 NYCRR] § 1250.10 [a]).
Footnote 4: Plaintiff does not challenge the dismissal of the claims seeking monetary damages from the State, thereby abandoning the issue.