Dias v Town of Ulster (2025 NY Slip Op 04127)

Dias v Town of Ulster

2025 NY Slip Op 04127

Decided on July 10, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 10, 2025

CV-23-2042
[*1]Joao Dias, Respondent,
v
Town of Ulster, Appellant.

Calendar Date:May 28, 2025

Before:Aarons, J.P., Lynch, Ceresia, McShan and Powers, JJ.

Bond, Schoeneck & King, PLLC, Syracuse (Richard L. Weber of counsel), for appellant.
Gagliano Law, PLLC, Newburgh (Kevin G. Gagliano of counsel), for respondent.

McShan, J.
Appeal from a judgment of the Supreme Court (David Gandin, J.), entered October 2, 2023 in Ulster County, upon a decision of the court in favor of plaintiff.
In or before 1986, defendant installed a drainage pipe that discharged stormwater onto a property located in the City of Kingston, Ulster County. Plaintiff subsequently purchased that property around 2004. Sometime around 2007, defendant extended the pipe onto plaintiff's property but did not otherwise alter the flow of stormwater. Plaintiff later discovered the drainage pipe and observed stormwater discharge onto the property that would frequently spread and pool on his property. In an attempt to remedy the issue, plaintiff paid for a third party to construct a swale along the western border of the property to control the water and reduce the ponding effect. That work was completed in 2021.
Shortly thereafter, plaintiff filed a notice of claim against defendant regarding alleged damage caused by the discharge of stormwater onto the property. Plaintiff then commenced this action alleging trespass, nuisance and inverse condemnation arising from the discharge of stormwater and seeking monetary damages as well as a permanent injunction prohibiting the discharge. After defendant joined issue, plaintiff moved for partial summary judgment seeking to enjoin defendant from further discharges of stormwater onto the subject property and for per diem monetary damages for each day that a discharge occurred. Defendant cross-moved for summary judgment seeking to dismiss the complaint. Defendant asserted in its motion that it had acquired a prescriptive easement for the drainage of water across the subject property. Upon consideration of the motions, Supreme Court (Schreibman, J.) found that plaintiff satisfied his burden for summary judgment regarding all claims, and defendant failed to raise an issue of fact or affirmative defense except with regard to defendant's claim of a prescriptive easement to carry water across the property. The court therefore ordered that the matter proceed to trial on the limited issues of whether defendant had acquired an easement by prescription and, if not, what damages or other remedies the court would grant plaintiff.
Following a bench trial, Supreme Court (Gandin, J.) found that defendant failed to establish that it acquired a prescriptive easement to discharge stormwater across the subject property from its discharge pipe to the city's outlet pipe and that plaintiff was entitled to damages representing the cost of installing the swale as well as a permanent injunction prohibiting defendant from discharging collected stormwater onto the subject property. Defendant appeals.
"In reviewing Supreme Court's nonjury verdict, [this Court] independently review[s] the probative weight of the evidence, together with the reasonable inferences that may be drawn therefrom, and grant[s] the judgment warranted by the record while according due deference to the trial court's factual findings [*2]and credibility determinations" (Mastbeth v Shiel, 218 AD3d 987, 988 [3d Dept 2023] [internal quotation marks and citations omitted]; see Kallman v Krupnick, 67 AD3d 1093, 1094-1095 [3d Dept 2009], lv denied 14 NY3d 703 [2010]). We turn first to defendant's claim of a prescriptive easement, which required that it demonstrate, "by clear and convincing evidence, that the use of the easement was open, notorious, hostile and continuous for a period of 10 years. Once the other elements are established, hostility is generally presumed" (Bekkering v Christiana, 231 AD3d 1444, 1445 [3d Dept 2024] [internal quotation marks and citations omitted]; see Burpoe v McCormick, 190 AD3d 1070, 1070 [3d Dept 2021]).
Distilled to its core, defendant's primary argument on appeal with respect to its claim for a prescriptive easement is that it was not required by law to prove the nature of the easement with any specificity, merely that the discharge of water onto plaintiff's property, for whatever purpose, otherwise met the requirements for the easement. That argument is generally belied by its own posttrial submission, which conceded that "[t]he concept of fair notice to a property owner of another's adverse use underlies the requirement that an easement by prescription have determinate boundaries." Nevertheless, defendant now argues, in sum and substance, that the discharge of surface water is not restrained by that principle. We disagree.
Relevant here, a prescriptive easement may be acquired for the discharge of water either onto or across the property of another (see Bono v Town of Humphrey, 188 AD3d 1744, 1745 [4th Dept 2020]; Zutt v State of New York, 50 AD3d 1133, 1133 [2d Dept 2008]; Torre v Meade, 226 AD2d 447, 447 [2d Dept 1996], lv denied 88 NY2d 813 [1996]; Town of Hamburg v Gervasi, 269 App Div 393, 395 [4th Dept 1945]; compare Vinciguerra v State of New York, 262 AD2d 743, 745 [3d Dept 1999], with Village of Schoharie v Coons, 34 AD2d 701, 702 [3d Dept 1970], affd 28 NY2d 568 [1971]). Specificity of purpose is critical, as "[t]he right to a prescriptive easement is measured by the extent of the use" (Auswin Realty Corp. v Klondike Ventures, Inc., 163 AD3d 1107, 1110 [3d Dept 2018]; see Taylor v State of New York, 302 NY 177, 187 [1951]; Prentice v Geiger, 74 NY 341, 347 [1878]; Mandia v King Lbr. & Plywood Co., 179 AD2d 150, 157 [2d Dept 1992]). In that sense, "[t]he extent of the enjoyment measures the extent of the right" and "the prescriptive right is confined to the right as exercised for" the prescriptive period (Prentice v Geiger, 74 NY at 347; see Daniello v Wagner, 221 AD3d 956, 960 [2d Dept 2023]; Reiss v Maynard, 170 AD2d 992, 993 [4th Dept 1991], lv dismissed 78 NY2d 908 [1991]). Although defendant utilizes the terms "onto" and "across" interchangeably, Supreme Court determined that the easement sought by defendant was for the drainage of water over and across plaintiff's land, a determination that is supported by defendant's own submissions [*3]in the record. We are in accord with the court's determination that the proponent of an easement must establish its scope (see Woehrel v State of New York, 178 AD3d 1169, 1171 [3d Dept 2019]; Auswin Realty Corp. v Klondike Ventures, Inc., 163 AD3d at 1110) and that such principle is applicable in cases involving the discharge of surface water onto or across the property of another (see Patel v Garden Homes Mgt. Corp., 156 AD3d 807, 809 [2d Dept 2017]; Zutt v State of New York, 50 AD3d at 1133). Therefore, noting the scope of the prescriptive easement explicitly sought by defendant, it bore the burden of clearly and convincingly establishing the extent of the prescriptive right which, in this case, required evidence of a reasonably specific path through which the water historically flowed across plaintiff's property. In that endeavor, we find that defendant's proof was lacking.
At trial, Christopher Zell, defendant's expert in the field of land surveying and the individual who supervised the preparation of a land survey of the subject property, explained that the subject pipe is located in the southeast corner of the property and was installed for the purpose of draining multiple catch basins that collect stormwater from the nearby street intersection. Frank Petramale, defendant's superintendent of highways, stated that the pipe was extended onto plaintiff's property sometime around 2007 and would always drain water directly onto the property after a rain session. According to Petramale, the discharged water would create a visible stream or pond on the property and flow around the southern portion of the lot, then the western portion, before it ultimately flowed into another pipe that is owned by the City of Kingston. However, acknowledging the effect of the swale installed by plaintiff in 2021, Petramale conceded that he was unable to recall a defined path where the stormwater would discharge continuously, stating that the flow of water "wasn't so defined" and would travel in accordance with the grading of the property.[FN1] Similarly, Dennis Larios, who testified as an expert witness in his capacity as a professional engineer, explained that water from the pipe would flow into the low area, probably pond, and eventually make its way to the City of Kingston's culvert system. According to Larios, until plaintiff constructed the swale on the property, there was never a definite or defined area where the water flowed across the property. On these facts, Supreme Court's determination that defendant "failed to [clearly and convincingly] demonstrate [its] use of a definite and certain way [to discharge water over plaintiff's land] for the prescriptive period" was proper (Zaluski v McCormick, 49 AD2d 982, 982 [3d Dept 1975]; see Patel v Garden Homes Mgt. Corp., 156 AD3d at 809; Zutt v State of New York, 50 AD3d at 1133-1134; Town of Hamburg v Gervasi, 269 App Div at 395; see also Mastbeth v Shiel, 218 AD3d at 990; cf. Dutcher v Town of Shandaken, 23 AD3d 781[*4], 783 [3d Dept 2005]).
Turning to the relief granted by Supreme Court, we reject defendant's contention that the court's award to plaintiff representing the cost of repairs was in error. Plaintiff testified to the scope of the repairs and the costs he had incurred, which remained unpaid pending the resolution of this matter. That testimony was sufficiently specific to justify the award representing plaintiff's repair costs (see WFE Ventures, Inc. v GBD Lake Placid, LLC, 197 AD3d 824, 834 [3d Dept 2021]; Warm v State of New York, 308 AD2d 534, 536 [2d Dept 2003], lv denied 2 NY3d 703 [2004]; compare Mastbeth v Shiel, 218 AD3d at 990; Matter of Behar v Friedman, 180 AD3d 671, 676 [2d Dept 2020]).
However, with respect to Supreme Court's award of a permanent injunction, we agree with defendant's contention that the equities do not favor granting such relief. Entitlement to a permanent injunction may be established through evidence "that a violation of a right is presently occurring, or threatened and imminent, that [there is] no adequate remedy at law, that serious and irreparable harm will result absent the injunction, and that the equities are balanced in [plaintiff's] favor" (Huang v Fort Greene Partnership Homes Condominium, 228 AD3d 912, 917-918 [2d Dept 2024] [internal quotation marks, brackets and citation omitted]; see Malinski v State of New York, ___ AD3d ___, ___, 2025 NY Slip Op 02833, *2 [3d Dept 2025]; New York State Elec. & Gas Corp. v County of Chemung, 137 AD3d 1550, 1556 [3d Dept 2016], lv dismissed 28 NY3d 1044 [2016]). Larios testified that, in the event the culvert and drainage pipe was removed, the resulting water would create hazards in the intersection such as flooding and icing in the winter months. Accordingly, the enjoinment of discharge, at this time, would create a serious threat to public health, safety and welfare such that "the balance of equities d[oes] not favor" the equitable relief sought (McDermott v City of Albany, 309 AD2d 1004, 1005-1006 [3d Dept 2003], lv denied 1 NY3d 509 [2004]). Further, the record reflects that plaintiff is not without an adequate remedy at law, as the evidence supports the potential for a permanent solution to the drainage issue short of injunctive relief, inasmuch as the parties all acknowledge that water could be diverted to the drainage culvert in the northwest portion of the lot, albeit at an unspecified cost (see Warm v State of New York, 308 AD2d at 536; DiMarzo v Fast Trak Structures, 298 AD2d 909, 910-911 [4th Dept 2002]; cf. Higgins v Village of Orchard Park, 277 AD2d 989, 990 [4th Dept 2000]).[FN2] Thus, in light of Supreme Court's determination to grant equitable relief and forgo a monetary remedy based upon the lack of definitive proof in the record with respect to the appropriate costs for a permanent remedy, it is appropriate to remit the matter for an inquest on damages consisting of the lesser of the diminution to the value of plaintiff's property as a result of the drainage [*5]or the cost to construct a permanent solution that would prevent future injury (see Mastbeth v Shiel, 218 AD3d at 991; McDermott v City of Albany, 309 AD2d at 1006; see generally Phoenix Ins. Co. v Cohen, 34 AD3d 775, 776 [2d Dept 2006]; Restey v Higgins, 252 AD2d 954, 954 [4th Dept 1998]). The parties' remaining contentions, to the extent not explicitly addressed, have been considered and found without merit.
Aarons, J.P., Lynch, Ceresia and Powers, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as granted plaintiff a permanent injunction; matter remitted to the Supreme Court for further proceedings not inconsistent with this decision; and, as so modified, affirmed.

Footnotes

Footnote 1: Petramale further conceded that defendant had not performed any routine maintenance on the pipe during the prescriptive period beyond the extension of the pipe around 2007.

Footnote 2: Plaintiff estimated the cost at around $50,000 to $60,000 but acknowledged that he was uncertain as to the accuracy of that figure, as his expertise in construction was in a different field.